## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RALSTON BROWN, | ) | 3:25-CV-50 (SVN) |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CARRINGTON MORTGAGE | ) | |
| SERVICES, | ) | September 30, 2025 |
| *Defendant.* | ) | |

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

In this civil action, *pro se* Plaintiff Ralston Brown alleges Defendant Carrington Mortgage Services ("Carrington") fraudulently overcharged his mortgage account, lied to the Connecticut Superior Court in a state civil action Plaintiff brought against Carrington and in a state foreclosure action Carrington brought against Plaintiff, and violated federal consumer protection law. Plaintiff asserts three claims: (1) fraud in relation to statements made in an affidavit by Carrington's Vice President of Lien Release in the underlying state court civil action; (2) fraud in relation to the amount Carrington asserts Plaintiff owes in the underlying state court foreclosure action; and (3) violations of the Fair Debt Collection Practices Act ("FDCPA") when Carrington reported Plaintiff's alleged debt to consumer reporting agencies.[1]

Carrington seeks to dismiss Plaintiff's action without leave to amend, arguing that all three counts should be dismissed pursuant to abstention doctrines, that the two fraud counts are barred by litigation privilege, and that all three counts fail to state a claim. *See* Def.'s Br., ECF No. 16; Def.'s Reply, ECF No. 28. Plaintiff opposes the motion. *See* Pl.'s Opp'n, ECF No. 27.

---

[1] Plaintiff's allegations in Count Three also appear to allege violations of the Fair Credit Reporting Act ("FCRA"), and the Court addresses such allegations accordingly.

For the reasons described below, Carrington's motion to dismiss is GRANTED as to all claims. Plaintiff is permitted leave to file an amended complaint only with respect to his fraud and FCRA claims. Any such amended complaint must be constrained to allegations not precluded by litigation privilege.

## I.      FACTUAL BACKGROUND[2]

Factual allegations from the complaint are taken as true for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A.   The Underlying Mortgage & the Alleged Overcharges

In December of 2017, Plaintiff obtained a $216,000 home equity loan from Carrington. *See* ECF No. 1 ¶ 6.[3] The terms of the loan—a 30-year, fixed-rate mortgage—required Plaintiff to make monthly payments of $2,231.21, including payments into escrow.[4] *See id.* ¶¶ 6, 30. On or about April 2, 2018, Carrington notified Plaintiff he would need to make higher monthly payments to cover an increase in his homeowner's insurance premium. *Id.* ¶ 9. Plaintiff disputes the accuracy of Carrington's recordkeeping with respect to his homeowner's insurance premium. *See id.* ¶¶ 13–14, 61. Over the next several years, Carrington "fraudulent added [sic]" an unspecified

---

[2] In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must generally "limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Lindsay v. Tierney*, No. 3:18-CV-840 (JCH), 2019 WL 132728, at *1 (D. Conn. Jan. 8, 2019) (citing *Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2d Cir. 1991)). The Court may also take judicial notice of "facts that 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (citing Fed. R. Evid. 201); *see also Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (noting that courts may take judicial notice of relevant facts in the public record). Because Plaintiff is proceeding *pro se*, the Court may also consider new facts raised in his opposition to Defendant's motion to dismiss to the extent that they are consistent with the complaint. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013); *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018).

[3] Plaintiff appears to have inadvertently labeled two paragraphs in the complaint as number 6. This citation to paragraph 6, and all other citations to that paragraph in this Order, refer to the paragraph included as part of the Factual Allegation section that spans pages 2 and 3 of the complaint. *See* ECF No. 1 at 2–3.

[4] Although Plaintiff indicates that his monthly payment would be $1,143.09 in his complaint and at one place in his brief, all references to what he asserts is his accurate monthly payment state that it is $2,231.21. *Compare* ECF No. 1 ¶ 6 *with* ECF No. 1 ¶¶ 26, 30. The Court believes the difference between these payment amounts reflects the amount Plaintiff was required to pay into escrow on top of his loan payments.

"incidental amount" to Plaintiff's mortgage account, *id.* ¶¶ 15, 19, charged "unwarranted" and "excessive" late fees and interest, *id.* ¶¶ 17–19, and "concealed that it fraudulently charged [Plaintiff] more than his principal obligations," *id.* ¶ 29. Notably, at least some late fees were assessed during a period when a "COVID agreement" was in place.[5] *Id.* ¶ 46.

Carrington stopped accepting Plaintiff's mortgage payments in September of 2021, *see id.* ¶ 20, and continued adding fees to Plaintiff's mortgage account, including a "one-month late fee" of $975 on November 1, 2021, *id.* ¶ 31. Plaintiff further asserts that Carrington reported payments late that were timely mailed. *See id.* ¶ 31. Plaintiff repeatedly alleges that Carrington engaged in fraudulent conduct and relied on inaccurate accounting that fell short of industry standards and was "deliberately intended to harm consumers." *Id.* ¶¶ 36, 42, 58, 61, 63.

## B. The State Civil Action

In November of 2021, Plaintiff sued Carrington in Connecticut Superior Court for unfair trade practices, negligent misrepresentation, negligence, and breach of contract. *Id.* ¶ 10; *Brown. v. Carrington Mortg. Servs., LLC* ("State Action"), No. FBT-CV21-5047334-S, Compl. (Conn. Super. Ct. Nov. 15, 2021).

A Carrington official, Vice President of Lien Release Elizabeth A. Osterman, submitted an affidavit in that case. *See* ECF No. 1 ¶¶ 25–26; ECF No. 1-1. In her affidavit, Osterman described the data system Carrington used to account for insurance premiums in borrowers' mortgage statements. ECF No. 1-1 ¶ 10. Notably, according to Osterman, this system does not permit

---

[5] Plaintiff does not explain the impact of the "COVID Agreement" on his loan obligation. *See* ECF No. 1 ¶ 46. But the affidavit of Elizabeth Osterman included as Exhibit 1 to the complaint indicates that "Plaintiff was approved for a COVID payment deferral . . . on March 4, 2022." *See* Pl.'s Ex. 1, ECF No 1-1, ¶ 17. That same affidavit indicates that Plaintiff had requested a "COVID related deferment" as early as March of 2020, but that Carrington was not offering such deferments at that time. *See id.* ¶ 15. In referencing this affidavit, the Court acknowledges that Plaintiff alleges that at least some other portions of the affidavit are fraudulently inaccurate as part of his claim in Count One, *see* ECF No. 1 ¶¶ 25–42, though he does not take particular issue with the affidavit's statement of his COVID deferment.

Carrington to exercise any discretion or otherwise provide input when accounting for credits or

debits to a borrower's account. *Id.* This system was used in conjunction with Plaintiff's mortgage

statements. *Id.* ¶ 11. Osterman's affidavit contained the following representations regarding

Plaintiff's required monthly payment:

> [O]n February 15, 2018, Carrington received an invoice for Plaintiff's insurance
> renewal premium in the amount of $3,326.77. . . . On February 16, 2018, Carrington
> disbursed this amount. The insurance portion of the escrow payment increased
> from $216.88 to $277.23. An escrow analysis from March 16, 2018, which is
> contained in the Servicing Records, reflects a shortage of $603.39 which was spread
> over 12 months of *$50.28 per month*. . . . As a result of the increase, Plaintiff's
> monthly payments increased *from $2,231.21 to $2,341.83* effective with the May
> 1, 2018 payment. . . . Plaintiff tendered $2,231.21 on May 14, 2018, which was
> credited to unapplied because the payment was not the required amount. . . . [O]n
> June 16, 2018, Plaintiff paid $2,231.21 for his June 1, 2018 payment. . . . Carrington
> pulled $110.61 from the June 16th payment, which combined with the unapplied
> funds of $2,231.22 served to satisfy the May 1, 2018 payment. . . . The $2,120.60
> remaining from the June 16th payment was credited to unapplied. Partial payments
> are not considered timely pursuant to Loan servicer standards in the industry.

*Id.* ¶ 11–12 (emphasis added).

Carrington raised Plaintiff's monthly payments from $2,231.21 to $2,341.83—an increase

of $110.62—while representing in the affidavit that the amount needed to cover the escrow

shortfall was only $50.28, leaving what Plaintiff asserts is an unexplained difference of $60.34.

ECF No. 1 ¶ 30. On January 9, 2024, during an oral argument in the State Action, an attorney

representing Carrington, Jordan Schur, was asked to explain this discrepancy. *See id.* ¶ 16. The

attorney answered that the amount in excess of $50.28—that is, the $60.34 unexplained gap—was

due to an increase in Plaintiff's City of Bridgeport property taxes. *Id.* Plaintiff alleges this

statement by Attorney Schur was an intentional false statement. *Id.* ¶ 35.

C. The Foreclosure Action

In September of 2024, "without a notice of intent to foreclose the mortgage," Carrington

filed a foreclosure action against Plaintiff. *See id*. ¶ 43; *see also Carrington Mortg. Servs., LLC v.*

*Brown*, No. FBT-CV24-6138264-S ("Foreclosure Action"), Dkt. No. 100.30 (Conn. Super. Ct. Sept. 17, 2024).   Carrington claimed that Plaintiff had defaulted on the mortgage; owed $281,866.42; and certified that this balance was accurate, knowing that this debt was "fraudulent, disputed and not factual."   *See* ECF No. 1 ¶¶ 45–47.   Plaintiff alleges that this balance reflects Carrington's fraudulent overcharges related to his insurance payments, "unwarranted and excessive late fees, adding [a] late fee during a period a COVID agreement was in place, payments Carrington received however returned to the plaintiff, [and] payments Carrington receive[d], however claimed the plaintiff didn't [pay]."   *Id.* ¶ 46.   Plaintiff also alleges that Carrington brought the Foreclosure Action maliciously to obtain his equity in the property, which is "significantly more" than the amount of the loan.   *Id.* ¶¶ 49–50.

    D.  <u>Debt Collection and Reporting</u>

    Plaintiff further alleges that Carrington inaccurately reported debt, late payments, and missed payments, to credit agencies, which damaged his credit score and "defamed" him.   *See id.* ¶¶ 21, 40, 54, 60, 70–72.   He also alleges that Carrington hired "incompetent" employees to collect the debt, *id.* ¶ 59, failed to send "the required 1692g notice," *id.* ¶ 68;[6] "refus[ed] to verify or to provide validation of the debt," *id.* ¶ 69; and "[made] numerous and frequent harassing phone calls" seemingly to collect on the debt, *id.*

    E.  <u>Relief Sought</u>

    Plaintiff seeks compensatory damages (including for "intentional infliction of emotional distress," a claim not alleged in the complaint), "wa[i]ver of the Defendant[']s right to collect payment on the loan," a permanent injunction preventing Defendant from foreclosing on the

---

[6] The Court believes Plaintiff intended to reference 15 U.S.C. § 1692g, which requires a debt collector to send a consumer a written notice containing certain details regarding the debt that it seeks to collect.

property, and a permanent injunction on any foreclosure action "currently pending or to be instituted" against Plaintiff. *Id.* at 15.

## II.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a case for lack of subject matter jurisdiction. A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova*, 201 F.3d at 113. The plaintiff bears the burden of proving the existence of subject matter jurisdiction. *Id.* In assessing a motion to dismiss for lack of subject matter jurisdiction, the Court may refer to evidence outside of the pleadings. *Id.*

### B.    Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and

determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

These pleading standards apply to self-represented parties. It is true that courts are under an obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted). But at the same time, a *pro se* complaint must meet the basic pleading standards outlined above to survive a motion to dismiss. *Fowlkes*, 790 F.3d at 387 (citing *Twombly*, 550 U.S. at 570).

## III.    COUNTS ONE AND TWO: COMMON LAW FRAUD CLAIMS

Because Plaintiff's claims are barred in part for lack of jurisdiction pursuant to the *Younger* doctrine and because the remainder of Plaintiff's claims fail to state a claim, Carrington's motion to dismiss is granted as to Counts One and Two.

In Counts One and Two, Plaintiff brings two claims against Carrington for common law fraud, which the Court construes as brought under Connecticut law.[7]  Within these two counts are essentially three categories of allegations.  The first category, scattered across both fraud counts, are allegations that Carrington fraudulently overcharged Plaintiff in connection with his mortgage.  The second category relates to allegedly fraudulent statements made by Carrington in the context of the State Action, which are confined to Count One.  Third, Plaintiff raises allegations of false statements made in the context of the Foreclosure Action, which are in Count Two.

In seeking to dismiss these claims, Carrington argues the Court lacks jurisdiction under Fed. R. Civ. P. 12(b)(1) because the ongoing state proceedings implicate the abstention doctrines set forth in *Younger v. Harris*, 401 U.S. 37 (1971) and *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).  ECF No. 16 at 4–8.  Second, Carrington argues Counts One and Two are barred by "litigation privilege," a Connecticut doctrine that provides that statements made in a judicial proceeding generally cannot give rise to tort claims.  *Id.* at 8–10 (citing *Cruz v. Signify N. Am. Corp.*, No 3:22-CV-1081 (SVN), 2023 WL 3499579, at *5 (D. Conn. May 17, 2023)).  Third and finally, Carrington argues these counts should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  *Id.* at 10–16.  Plaintiff opposes each of these arguments.  *See* ECF No. 27-1.  The Court addresses each in turn and concludes that Defendant's motion to dismiss should be granted.

---

[7] Although Counts One and Two contain some language that sounds in contract, *see* ECF No. 1 ¶ 32, the complaint does not provide reasonable notice to Carrington that it is being sued in Counts One or Two under any legal theory other than fraud.  Plaintiff is evidently familiar with breach of contract and negligence arguments, as evidenced by the claims he brought in his *pro se* State Action, but chose not to bring those claims here.

A. *Younger* Abstention[8]

Under *Younger*, federal courts must abstain from granting equitable relief in certain kinds of state proceedings, including as relevant here, civil proceedings that are "uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (quoting *New Orleans Pub. Serv., Inc. v. Council of Cnty. of New Orleans*, 491 U.S. 350, 367–68 (1989)). This doctrine "embodies the 'longstanding public policy against federal court interference with state court proceedings.'" *Gristina v. Merchan*, 131 F.4th 82, 86 (2d Cir. 2025) (quoting *Younger*, 401 U.S. at 43).

*Younger* abstention is applicable to attempts to enjoin state court foreclosure proceedings, as orders related to foreclosure are uniquely in furtherance of the state courts' ability to perform their judicial functions of resolving property-related disputes and implicate the state's interest in enforcing the orders and judgments of its courts. *Toczek v. Alvord*, 841 F. App'x 263, 266 (2d Cir. 2021) (summary order) (citing, among other cases, *El Bey v. Bellis*, No. 19-CV-336 (KAD), 2019 WL 2502929, at *4 (D. Conn. June 17, 2019) ("Indeed a state foreclosure action is one of the types of actions in which federal courts abstain from interfering, pursuant to *Younger*.")).

Here, Plaintiff seeks both injunctive relief and monetary damages. *See* ECF No. 1 at 15. *Younger* abstention is appropriate as to Plaintiff's request for injunctive relief, as the injunctive

---

[8] Defendant moves to dismiss on *Younger* abstention grounds under Rule 12(b)(1), pertaining to subject matter jurisdiction. There is a split of authority as to whether *Younger* abstention is appropriately analyzed under Rule 12(b)(1) or Rule 12(b)(6). *See Miller v. Sutton*, No. 3:15-CV-1111 (MPS), 2016 WL 3976540, at *9 (D. Conn. July 21, 2016) ("Although many courts apply Fed. R. Civ. P. 12(b)(1) when analyzing *Younger* abstention, some find that dismissal based on *Younger* abstention is appropriate under Fed. R. Civ. P. 12(b)(6) rather than Fed. R. Civ. P. 12(b)(1) when it is clear from the face of the complaint that the defense bars the plaintiff's claims as a matter of law.") (internal punctuation omitted). As the Second Circuit has held that *Younger* abstention is "mandatory" when it applies and "its application deprives the federal court of jurisdiction in the matter," *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 197 (2d Cir. 2002), the Court believes Defendant properly framed its motion under Rule 12(b)(1). Nonetheless, as the applicability of *Younger* is clear from the face of the complaint, it would also result in dismissal under Rule 12(b)(6), were that the appropriate governing rule.

relief Plaintiff seeks would directly interfere with the ongoing Foreclosure Action. Plaintiff requests "a permanent injunction preventing Carrington Mortgage Service, LLC from foreclosing on the property" and "a permanent injunction on any foreclosure actions currently pending or to be initiated against the Plaintiff Ralston Brown." ECF No. 1 at 15. But this is exactly the type of federal court interference in state court proceedings that *Younger* seeks to protect against. Accordingly, to the extent they seek injunctive relief, Counts One and Two are dismissed under *Younger*, without prejudice. *See Helms Realty Corp. v. City of N.Y.*, 820 F. App'x 79, 81 (2d Cir. 2020) (where *Younger* applied, "the District Court should have abstained by dismissing the case without prejudice").

As for Plaintiff's request for monetary damages, abstention is not required. *Younger* does not require a court to dismiss claims for damages. *Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000). In reaching this conclusion, the Second Circuit reasoned that "[w]hen money damages, as opposed to equitable relief, are sought, it is less likely that unacceptable interference with the ongoing state proceeding, the evil against which *Younger* seeks to guard, would result from the federal court's exercise of jurisdiction." *Id.* Thus, the Second Circuit has held that "abstention and dismissal are inappropriate when damages are sought, even when a pending state proceeding raises identical issues and [it] would dismiss otherwise identical claims for declaratory and injunctive relief." *Id.* Instead, the Second Circuit counsels that "a stay of the action pending resolution of the state proceeding may be appropriate." *Id.* (citing *Giulini v. Blessing*, 654 F.2d 189, 192–94 (2d Cir. 1981)). As the Court finds that Plaintiff fails to state a claim for relief, as discussed below, the case does not warrant a stay.

B.  *Colorado River* Abstention

Next, the Court rejects Carrington's argument that it must abstain from presiding over Plaintiff's fraud claims, insofar as they seek money damages, under *Colorado River*, as no "exceptional circumstances" are present.

Under *Colorado River*, federal courts may, in the interest of preserving judicial resources, abstain from exercising their jurisdiction in some exceptional circumstances, including when the controversy before the federal court duplicates a state proceeding.  424 U.S. at 817–18.  These exceptional circumstances must overcome the presumption that the federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Id.* at 817.  While any decision to abstain on *Colorado River* grounds is left to the district court's discretion, the balance is "heavily weighted in favor of the exercise of jurisdiction." *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 523 (2d Cir. 2001) (citation omitted).

To exercise *Colorado River* abstention, a district court must first establish the prerequisite conditions:  that there are "concurrent" and "parallel" proceedings. *Zern v. Big Air Bag B.V.*, No. 3:22-CV-665 (SVN), 2022 WL 17829030, at *2 (D. Conn. Dec. 21, 2022) (citing *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)).  Concurrency is self-explanatory.  Proceedings are parallel "when substantially the same parties are contemporaneously litigating substantially the same issue in another forum."  *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (citation omitted).  Put another way, proceedings are parallel when "there is an identity of parties, and the issues and relief sought are the same." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997).  If actions are not parallel, *Colorado River* abstention is not proper.  *Smulley v. Mut. of Omaha Bank*, 634 F. App'x 335, 337 (2d Cir. 2016) (summary order).

If the state and federal proceedings are concurrent and parallel, the district court weighs six factors to determine whether *Colorado River* abstention is appropriate. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). The six factors are:

> (1) the assumption of jurisdiction by either court over any res or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

*Vill. of Westfield v. Welch's*, 170 F.3d 116, 121 (2d Cir. 1999). No single factor is decisive, and the weight of the factors varies from case to case. *Id.* The neutrality of a factor "is a basis for retaining jurisdiction, not for yielding it." *Woodford*, 239 F. 3d at 522.

Here, there are concurrent proceedings: this federal action, the State Action, and the Foreclosure Action. The Court assumes, without deciding, that the actions are fully parallel, as well. There is an identity of parties, as both Plaintiff and Carrington are parties to all three of the actions, and the parties are litigating in all three actions the validity of Plaintiff's alleged mortgage debt and whether Carrington can foreclose on the mortgage. *See Bromfield v. Lend-Mor Mortg. Bankers Corp.*, No. 3:15-CV-1103 (MPS), 2016 WL 632443, at *4 (D. Conn. Feb. 17, 2016) (finding actions are parallel where "the main issue in the pending litigation in state court—the foreclosure of [the plaintiff's property]—is also the main issue in this federal action").

But analysis of the other factors does not, on the whole, support abstention. Carrington's analysis of the factors is brief, *see* ECF No. 16 at 7–8, but the Court has conducted a more searching review.

- The first factor, assumption of jurisdiction over a *res* or property, is implicated in the Foreclosure Action. A foreclosure action is an *in rem* proceeding. *F.D.I.C. v. Four Star Holding Co.*, 178 F.3d 97, 102 (2d. Cir. 1999). Thus, this factor supports abstention.

- The second factor, venue, weighs in favor of exercising federal jurisdiction because, as Carrington concedes, federal court in Hartford is no more geographically convenient than state court in Bridgeport. *See* ECF No. 16 at 7. Therefore, this factor favors exercising federal jurisdiction.

- The third factor, piecemeal litigation, also weighs in favor of exercising federal jurisdiction. *Colorado River* abstention is particularly warranted to avoid piecemeal litigation when multiple actions pose "a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." *Woodford*, 239 F.3d at 524. Carrington asserts, without citation to any supporting caselaw, that "[l]itigating this action while [the state court actions] remain pending would result in piecemeal litigation." ECF No. 16 at 7. But Carrington has not identified any reason why this case, more than a generic case involving concurrent and parallel proceedings, raises a risk of piecemeal litigation. *See Dalzell Mgmt. Co., Inc. v. Bardonia Plaza, LLC*, 923 F. Supp. 2d 590, 600 (S.D.N.Y. 2013) (noting the risk of conflicting outcomes is inherent in any case involving parallel proceedings).

- The fourth factor, timing, supports abstention. This factor considers not just which complaint was filed first, but "how much progress has been made in the two actions." *Moses Cone*, 460 U.S. at 21. Plaintiff filed the State Action raising similar issues as those presented here years ago, and that case is close to trial, *see* State Action, Dkt. No. 199.10 (granting motion to continue October 7, 2025, trial date), whereas this federal case is relatively nascent. The Foreclosure Action, too, is at the summary judgment stage. *See* Foreclosure Action, Dkt. No. 135.00 (setting summary judgment hearing on October 15, 2025). Thus, this factor favors abstention. *See Vill. of Westfield*, 170 F.3d at 123 (finding abstention improper where there was considerable progress in the federal action and comparatively limited progress in the state action).

- The fifth factor, whether state or federal law supplies the rule of decision, weighs in favor of exercising federal jurisdiction. A federal court applies state law in a diversity case, but this factor nevertheless weighs in favor of exercising federal jurisdiction when the case involves "only routine issues of state law" because the federal court is "fully capable" of applying the state's substantive law. *Pike Co., Inc. v. Universal Concrete Products, Inc.*, 284 F. Supp. 3d 376, 391 (W.D.N.Y. 2018) (citations and internal quotation marks omitted); *see also Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir. 1986) (explaining that, because "[s]tate law provides the rule of decision in all diversity cases," this factor weighs in favor of abstention only in "rare circumstances"). Carrington contends this factor weighs in favor of abstention merely because "the claims in all three actions will be controlled by Connecticut state law." *See* ECF No 16 at 7. However, this overlooks that the state-law issues raised are straightforward issues of common-law fraud and that Count Three arises under

federal law.[9]  Under these circumstances, this factor weighs in favor of exercising federal jurisdiction.

- The sixth factor, whether the state court will adequately protect the parties' rights, is neutral, which effectively favors exercising federal jurisdiction.  Carrington contends, again without citing any caselaw, that Connecticut courts routinely handle foreclosure matters.  *See* ECF No. 16 at 7.  But they have provided no reason to find that federal courts are not adequate to consider the claims in this case, which include at least one federal law claim.  And when both state and federal forums are adequate, this factor "provides no reason to abstain from exercising federal jurisdiction."  *Pike Co.*, 284 F. Supp. 3d at 391–92.

In sum, four of the *Colorado River* factors weigh in favor of exercising federal jurisdiction, and two weigh against.  In favor of abstention are factors one and four—the state court has already established jurisdiction over this matter involving real property and the state court is further along in its proceedings—but the remaining factors all weigh against abstention.  Because "[o]nly the clearest of justifications will warrant dismissal," *Colorado River*, 424 U.S. at 819, the Court declines to abstain under *Colorado River*.

C.  <u>Litigation Privilege</u>

Next, the Court considers Carrington's arguments concerning whether Counts One and Two are barred by the litigation privilege.  Plaintiff's claims in Counts One and Two—to the extent they relate to the Osterman affidavit and to statements made by Carrington's attorney during the state court litigation—are barred by litigation privilege.  However, within Plaintiff's first two counts there are also allegations of fraud outside the context of litigation; those claims are not barred by litigation privilege.

Under Connecticut law, litigation privilege, also sometimes referred to as "absolute immunity," "protects the statements or actions that any individual makes, in the context of a

---

[9] The Court does not accept Carrington's argument that the FDCPA and FCRA allegations are controlled by state law because Count Three "incorporates the preceding counts as what maybe [sic] precursor violations" of those laws.  *See* ECF No. 16 at 7 n.1.  But even if the Court were to construe Count Three as an issue primarily of state law, the issues it involves are relatively straightforward such that this factor would not weigh in favor of abstention.

judicial proceeding, from giving rise to most types of tort claims." *Costello v. Wells Fargo Bank N.A.*, No. 16-CV-1706 (VAB), 2017 WL 3262157, at *14 (D. Conn. July 31, 2017) (citing *MacDermid, Inc. v. Leonetti*, 310 Conn. 616, 627 (2013)), *aff'd*, 739 F. App'x 77 (2d Cir. 2018) (summary order). "The purpose of affording absolute immunity to those who provide information in connection with judicial and quasi-judicial proceedings is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements." *Scholz v. Epstein*, 341 Conn. 1, 10 (2021) (citation omitted).

Federal courts in Connecticut routinely apply litigation privilege to claims that challenge representations made in underlying state court litigation. *See, e.g.*, *Cruz v. Signify N. Am. Corp.*, No. 3:22-CV-1081 (SVN), 2023 WL 3499579, at *13 (D. Conn. May 17, 2023), *appeal filed*, No. 23-937 (2d Cir. June 22, 2023); *Weldon v. MTAG Servs., LLC*, No. 3:16-CV-783 (JCH), 2017 WL 776648, at *10 (Feb. 28, 2017).[10]  In *Costello*, for instance, the district court dismissed claims against a bank under the litigation privilege doctrine because the claims arose out of alleged negligent misrepresentation of facts and false light invasion of privacy in a state foreclosure action. 2017 WL 3262157, at *15.

Most of the allegations in Counts One and Two are barred by litigation privilege.  Plaintiff relies heavily on the Osterman affidavit and Attorney Schur's representations made during oral

---

[10] Carrington places its litigation privilege argument in the Rule 12(b)(1) section of its brief.  Although the Connecticut Supreme Court has noted that absolute immunity implicates a Connecticut trial court's subject matter jurisdiction, *see Scholz*, 341 Conn. at 8; *Dorfman v. Smith*, 342 Conn. 582, 594 (2022), this Court agrees with Judge Meyer's holding in *Wang v. Delphin-Rittmon*, 664 F. Supp. 3d 205, 216 (D. Conn. 2023), that "[a] defense of absolute . . . immunity has nothing to do with a federal court's jurisdiction."  *See also In re Stock Exchs. Options Trading Antitrust Litig.*, 317 F.3d 134, 151 (2d Cir. 2003) ("Most immunities are affirmative defenses. . . . Affirmative defenses can be waived; lack of subject matter jurisdiction cannot be waived." (internal citations omitted)); *but see Sargent v. Town of Westport*, No. 3:14-CV-352 (JCH), 2017 WL 4157528, at *14 (D. Conn. Sept. 19, 2017) ("[B]ecause the litigation privilege concerns a court's subject matter jurisdiction, the court must consider whether it applies to the claims against all of the lawyer defendants.").  The Court will therefore assess Carrington's assertion of the litigation privilege under Rule 12(b)(6).

argument in the State Action in each of these fraud claims. But each of these is undoubtedly a statement made during a judicial proceeding or actions during litigation and, therefore, is covered by litigation privilege. Similarly, Carrington's statements to the Connecticut Superior Court in the Foreclosure Action, such as its certification of the balance on Plaintiff's mortgage account and its assertions of compliance with notice requirements—statements Plaintiff also relies on—are also covered by the privilege.

Although it is a somewhat closer call, Plaintiff's argument that Carrington's filing of the Foreclosure Action was an abuse of process and therefore should be excepted from litigation privilege fails. Although litigation privilege protects "a participant in a judicial proceeding for the words used therein," it does not bar a plaintiff from "attempting to impose liability upon a litigant for his improper use of the judicial system itself," such as through an abuse of process claim. *MacDermid*, 79 A.3d at 68–69. But "affixing the label of 'abuse of the litigation process' to a claim is not sufficient" because "purely legal conclusions such as these are not entitled to the presumption of truth." *Chien v. Jensen*, No. 3:24-CV-01717 (KAD), 2025 WL 1135407, at *6 (D. Conn. Apr. 16, 2025) (citing *Iqbal*, 556 at 678–79 and *Twombly* 550 U.S. at 555 (2007)). Thus, to prevail on an abuse-of-process exception, a movant "must allege the improper use of litigation to accomplish a purpose for which it was not designed." *Simms v. Seaman*, 69 A.3d 880, 893 (Conn. 2013) (internal quotation marks and citation omitted).[11]

Plaintiff asserts in his opposition brief that "Carrington improperly used the [state] court to accomplish a purpose for which the court were not designed, namely, to further the aforementioned fraud on [Plaintiff]." ECF No. 27-1 at 12 (citing *Varga v. Pareles*, 137 Conn. 663, 667 (1951));

---

[11] Count One cannot plausibly be construed as arguing that the State Action was an abuse of process because, as Carrington observes, it was Plaintiff himself who brought the State Action. *See* ECF No. 16 at 9. Thus, the abuse of process exception can only potentially apply to the Foreclosure Action.

*see also id.* at 11 (referring to "Carrington's improper use of the state court to file a fraudulent foreclosure action to subvert[]" the State Action); *id.* at 13 ("The complaint, is not barred by the litigation privilege because the scheme alleged in the complaint did not involve the use of baseless litigation tactics only; it also involved extrajudicial misconduct that were intentionally made to mislead the court.").[12]  But Plaintiff fails to allege facts to support the conclusion that Carrington's motives are that devious.  Absent facts to the contrary, a reasonable interpretation of Carrington's decision to commence the Foreclosure Action is that they intended to foreclose on the home on the home based on a possibly flawed accounting—not that it brought the Foreclosure Action to manipulate Plaintiff into paying unwarranted fees or dropping the State Action.

To the extent Plaintiff's fraud claims are based on statements that were made outside of the context of legal proceedings, however, the litigation privilege does not apply.  Carrington argues that "[t]he entirety" of Count One is based on the Osterman Affidavit and that Count Two "alleges actions taken wholly within the litigation context."  ECF No. 16 at 9–10.  But that is not entirely accurate.  Plaintiff alleges that Carrington raised his monthly payments and told him this was due to an increase in his homeowners' insurance premium, *see* ECF No. 1 ¶ 9; that Carrington overcharged late fees and engaged in improper business and accounting practices, *see id.* ¶¶ 31–32, 41, 50; and that Carrington "overpaid" Plaintiff's insurance premium, *see id.* ¶ 14.  These claims do not appear to stem from Defendant's litigation documents or statements.  *See* ECF No.

---

[12] In support, Plaintiff lifts several paragraphs from, but does not actually cite, *Deutsche Bank AG v. Vik*, 349 Conn. 120 (2024).  *See* ECF No. 27-1 at 13–15.  In *Vik*, the defendants stood accused of stacking a board of directors, illegally seeking the removal of a lien, and forging a Right of First Refusal ("ROFR") to disrupt and delay the sale of shares to satisfy an arbitral award, and then, when those efforts failed, initiated a lawsuit in federal court seeking to enforce the allegedly fraudulent ROFR and enjoin the sale.  349 Conn. at 123–30.  After the shares eventually sold at a lower price—in part because the federal lawsuit had injected uncertainty into the sales process—the plaintiff sued in state court.  *Id.* at 130.  The Connecticut Supreme Court held that litigation privilege *did not* protect the defendants, because the plaintiff had sufficiently alleged the federal case had been brought with the improper purpose of advancing the conspiracy against the plaintiff.  *Id.* at 147–48.  However, the Court finds *Vik* distinguishable because the allegations of vexatiousness are much thinner here.

27-1 at 11 (stating that Plaintiff "premised his claims on conduct that occurred outside the course of a judicial proceeding."). Therefore, Counts One and Two are not barred by litigation privilege, insofar as they rest on these allegations.

Accordingly, the portions of Counts One and Two that rely on allegations related to the Osterman Affidavit, to statements made by Carrington's attorney in oral argument, or to other statements or representations made by Carrington in the State Action or the Foreclosure Action are barred by litigation privilege. But Plaintiff's claims arising from conduct that occurred prior to or outside of the two state cases are not barred by litigation privilege.

D. Failure to State a Claim

Only portions of Plaintiff's fraud allegations related to Carrington's overbilling survive both application of the *Younger* abstention doctrine and the litigation privilege. But these claims still must be dismissed for failure to state a claim.

In addition to satisfying Federal Rule 12(b)(6), a claim for fraud must meet the heightened pleading standards set forth in Federal Rule 9(b) as well as the requirements established under Connecticut law. Federal Rule 9(b) imposes additional heightened pleading requirements for actions alleging fraud. To survive a motion to dismiss, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021) (citation omitted). "Malice, intent, knowledge, and other conditions of a person's mind," however, "may be alleged generally." Fed. R. Civ. P. 9(b). Moreover, "[a]lthough a plaintiff may plead generally the requisite fraudulent intent, he must allege facts giving rise to a strong inference of fraudulent intent, which may include facts showing that the defendant(s) had both motive and opportunity to commit fraud, or facts that

constitute strong circumstantial evidence of conscious misbehavior or recklessness." *E. Point Sys., Inc. v. Steven Maxim, S2k, Inc.*, 133 F. Supp. 3d 430, 434 (D. Conn. 2015) (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006)).

Under Connecticut law, fraud consists of "deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed." *Weinstein v. Weinstein*, 275 Conn. 671, 685 (2005). The elements of a fraud action are: "(1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." *Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC*, 739 F. Supp. 2d 109, 114 (D. Conn. 2010) (quoting *id.*).

As to the allegations related to fraudulent overbilling, including allegations related to fraudulent fees, Plaintiff's claim fails because it does not allege some of the basic elements of a fraud claim. The first element is likely satisfied as Plaintiff alleges that the billing statements Carrington sent him misrepresented the amount of money he owed. *See, e.g.*, ECF No. 1 ¶ 9 (alleging Carrington raised Plaintiff's monthly payment and stating that it was due to an increase in his homeowners' insurance premium), ¶¶ 31–32 (alleging Carrington charged late fees), ¶¶ 17–19 (alleging other various fees and charges), ¶ 46 (alleging Carrington "add[ed] a late fee during a period a COVID agreement was in place"). Plaintiff also has likely satisfied the third element— intent. Logically, the purpose of sending a billing statement is to induce the counterparty to rely on it and tender payment. Thus, where Carrington sent mortgage statements to Plaintiff that misrepresented the amount of money he owed, the intent behind such statements was to obtain Plaintiff's payment of the inflated amount.

But Plaintiff fails to allege facts that satisfy the second and fourth elements.  Although he alleges that Carrington's statements were untrue, Plaintiff alleges no non-conclusory facts to support the conclusion that such statements were untrue or that Carrington knew that such statements were untrue.  Instead, Plaintiff relies bald assertions and legal conclusions that Carrington knowingly overbilled him, which do not suffice to withstand a motion to dismiss, particularly under Rule 9(b)'s heightened pleading standard. *See Rolon*, 517 F.3d at 149.  Further, Plaintiff fails to allege that he actually relied on any false representation in the billing statements to his detriment.  Instead, Plaintiff asserts facts showing that he continued to pay the amount required by his earlier statements—thus paying less than what he was billed, defeating an inference of reliance.

As Plaintiff fails to allege facts to support a fraud claim related to Carrington's alleged overbilling, Counts One and Two must be dismissed in full.   Plaintiff will, however, be afforded leave to amend these claims.

## IV.     COUNT THREE: VIOLATION OF THE FDCPA/FCRA

Because Plaintiff fails to state a claim under either the FDCPA or the FCRA, Carrington's motion to dismiss is granted as to Count Three.

### A.  FDCPA Claim

Count Three fails to state a claim under the FDCPA because Plaintiff relies only on conclusory allegations to claim that Carrington is a debt collector under the FDCPA.

The FDCPA was enacted to, among other things, "eliminate abusive debt collection practices by debt collectors," and "to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  To bring a claim under the FDCPA, the plaintiff "must be a consumer who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the

defendant collecting the debt must be considered a debt collector, and (3) the defendant must have engaged in an act or omission in violation of FDCPA requirements." *Doody, Tr. of Mary Y. Doody Revocable Tr. Dated June 17, 2002 v. Nationstar Mortg., LLC*, No. 21-CV-00609 (VDO), 2023 WL 8476322, at *4 (D. Conn. Dec. 7, 2023) (citing 15 U.S.C. § 1692 *et seq.*; *Maleh v. United Collection Bureau, Inc.*, 287 F. Supp. 3d 265, 270 (E.D.N.Y. 2018)).

The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6)(F). A person who attempts to collect a debt originated directly by the person, or who attempts to collect a debt that was not in default when it was obtained by the person, is not a "debt collector" under the statute. *Id.*

Here, Carrington is not a "debt collector" under the statute for two reasons. First, Plaintiff alleges that he obtained the loan in question from Carrington. *See* ECF No. 1 ¶ 6. Carrington is thus not a "debt collector" because it originated the debt. *See* 15 U.S.C. § 1692a(6)(F). In his opposition to the motion to dismiss, Plaintiff points to language that Carrington has used in communications with him that might suggest it is a debt collector, but that does not make it one within the meaning of the FDCPA. Plaintiff refers to language from Carrington's complaint in the Foreclosure Action, which states that "[t]he amount due and owing is $281,866.42 good through October 3, 2024, plus accruing interest, fees and **collection costs**." ECF No. 27-1 at 26 (quoting ECF No. 1-2 at 15). Although it is understandable why Plaintiff would believe Carrington might be a "debt collector" because of this reference to collection costs, it is the definition of that term as defined by statute that governs, not the colloquial meaning.

Relatedly, Plaintiff has failed to allege that Carrington acquired the debt *after* the plaintiff defaulted. *See Johnson-Gellineau v. Stiene & Assocs., P.C.*, 837 F. App'x 8, 11 (2d Cir. 2020) (summary order) (affirming dismissal of FDCPA claim without leave to replead because the loan was not in default when defendant became the loan servicer); *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 183 (2d Cir. 2014) (same).[13] Here, since Carrington originated the loan, it acquired the debt *before* Plaintiff allegedly defaulted, not after. Thus, it cannot be a "debt collector" under the statutory definition for this reason, as well.

Accordingly, to the extent Count Three is brought under the FDCPA, it fails to state a claim. As Plaintiff cannot possibly plead that Carrington is a debt collector under the FDCPA, this claim is dismissed without leave to amend.

### B. FCRA Claim

Although the complaint is not entirely clear on this point, it appears Plaintiff is also attempting to state a claim that Carrington furnished false information about his debts to consumer reporting agencies in violation of the FCRA. *See* 15 U.S.C. § 1681s-2(b). As the Court construes *pro se* pleadings with special solicitude to raise the strongest arguments they suggest, the Court analyzes this potential claim. But it finds that Plaintiff again fails to state a claim under that law because he alleges neither of the basic elements required to state such a claim.[14]

---

[13] As Plaintiff notes in his opposition to the motion to dismiss: "[T]he legislative history of the FDCPA . . . clearly illustrates Congress's intent that the term debt collector not include parties who obtained an interest in the loan prior to default. . . . '[t]he committee does not intend the definition to cover . . . the collection of debts, such as mortgages and *student loans*, by persons who originated such loans; mortgage service companies and others who service outstanding debts for others, *so long as the debts were not in default when taken for servicing*.' S. Rep. No. 95-382, at 3-4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1697 (emphasis added)." ECF No. 27-1 at 28 (quoting *Skerry v. Mass. Higher Educ. Assistance Corp.*, 73 F. Supp. 2d 47, 54 (D. Mass. 1999)).

[14] Plaintiff fails to defend any potential FCRA claim in his opposition to Defendant's motion to dismiss. But the Court may nonetheless exercise its discretion to consider the argument. *See Santiago v. City of Rochester*, No. 19-CV-6860 (FPG), 2024 WL 4289600, at *4 n.7 (W.D.N.Y. Sept. 25, 2024) (choosing to overlook the plaintiffs' failure to address certain arguments made by defendants in light of plaintiffs' *pro se* status).

"Under 15 U.S.C. § 1681s-2(b), after a furnisher is notified by a consumer reporting agency that a consumer disputes information in a credit report, the furnisher must conduct an investigation, review relevant information provided by the consumer reporting agency, report the results of the investigation to the consumer reporting agency, report any inaccuracies to all other consumer reporting agencies to which the information was provided, and promptly modify, delete, or block the reporting of that information." *Tescher v. Experian Info. Sols, Inc.*, 21-CV-564048 (PMH), 2022 WL 564048, at *6 (S.D.N.Y. Feb. 23, 2022) (cleaned up). "Courts within this Circuit have held that to state a claim against a furnisher under 15 U.S.C. §1681s-2(b), a consumer must show that (1) a furnisher received notice of a credit dispute from a credit reporting agency (as opposed to from the consumer alone) and (2) the furnisher negligently or willfully failed to conduct a reasonable investigation." *Sanchez v. JPMorgan Chase Bank, N.A.*, No. 3:22-CV-1396 (SRU), 2023 WL 6049978, at *3 (D. Conn. Sept. 15, 2023) (cleaned up).

Here, Plaintiff disputes the accuracy of information Carrington may have provided to consumer reporting agencies concerning his mortgage debt. But he has not alleged that a consumer reporting agency notified Carrington of an error or any facts regarding a negligent investigation into such a notice. Accordingly, to the extent that Count Three is brought under the FCRA related to any investigation Carrington was obligated to conduct after receiving notice of a dispute, it fails to state a claim under Rule 12(b)(6). As it is possible that Carrington was notified of an error in information it reported to a credit reporting agency and that Plaintiff did not know he needed to plead this element in order to state a claim under the FCRA, this claim is dismissed with leave to amend.

**V.      CONCLUSION**

For the reasons described herein, Carrington's motion to dismiss is GRANTED as to all claims.   Insofar as Counts One and Two seek injunctive relief, they are dismissed without prejudice, but also without leave to amend.  Insofar as Count Three seeks to assert a FDCPA claim, it also is dismissed without leave to amend.

Plaintiff may file an amended complaint with respect to his fraud claims and any FCRA claim he wishes to pursue, in an attempt to rectify the pleading deficiencies set forth in this ruling. Any such amended complaint should be constrained to fraud allegations not precluded by litigation privilege and may not seek injunctive relief related to the pending state court actions that is barred by the *Younger* abstention doctrine.   Any amended complaint must be filed by **October 14, 2025**.

**SO ORDERED** at Hartford, Connecticut, this 30th day of September, 2025.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE