**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RALSTON BROWN,<br>*Plaintiff*,<br><br>v.<br><br>CARRINGTON MORTGAGE SERVICES,<br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 3:25-CV-00050 (SVN)<br><br><br><br><br><br>September 15, 2026 |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO AMEND**

Sarala V. Nagala, United States District Judge.

In this civil action, *pro se* Plaintiff Ralston Brown alleges Defendant Carrington Mortgage Services ("Carrington") fraudulently overcharged his mortgage account, mishandled his escrow payments, and promised to defer his mortgage payments under a forbearance plan, before determining Plaintiff was in default and initiating foreclosure proceedings. The Court previously granted Carrington's motion to dismiss the original complaint, but allowed Plaintiff leave to amend certain claims. *See Brown v. Carrington Mortg. Servs.*, No. 3:25-CV-50 (SVN), 2025 WL 2783593, at *13 (D. Conn. Sept. 30, 2025). In his amended complaint, Plaintiff asserts three counts of fraud and one count of intentional infliction of emotional distress as a result of Carrington's conduct. *See* Am. Compl., ECF No. 31.

Carrington now seeks to dismiss Plaintiff's action without leave to amend, arguing that the Court lacks subject matter jurisdiction over this action, that some of Plaintiff's claims are time-barred and others are preempted, and that the complaint fails to state a claim on which relief can be granted. *See* Mot. to Dismiss, ECF No. 33. Plaintiff opposes the motion. Opp. to Mot. to Dismiss, ECF No. 39. Plaintiff also seeks to amend his complaint, Mot. to Amend, ECF No. 51,

which Carrington opposes, Opp. to Mot. to Amend, ECF No. 52. For the reasons described below, Carrington's motion to dismiss is GRANTED, and Plaintiff's motion to amend is DENIED.

## I. FACTUAL BACKGROUND

Factual allegations from the amended complaint are taken as true for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where noted, the Court also draws facts from public state court dockets, of which the Court may take judicial notice. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

### A. The Underlying Mortgage & the Alleged Overcharges

In December of 2017, Plaintiff obtained a $216,000 home equity loan from Carrington. *See* ECF No. 31 ¶ 8. The terms of the loan—a 30-year, fixed-rate mortgage—required Plaintiff to make monthly payments of $2,231.21, of which $1,143.09 went toward payment of principal and interest and $1,088.12 was placed in escrow for Carrington to use to pay Plaintiff's property tax and liability insurance. *See id.* Plaintiff alleges that, over the years, Carrington "overpaid" his insurance premium, "fraudulent[ly] added" an unspecified "incidental amount" to Plaintiff's mortgage account, charged "unwarranted" and "excessive" late fees and interest, and "concealed that it fraudulently charged [Plaintiff] more than his principal obligations." *Id.* ¶¶ 13, 24, 27.

On or about April 2, 2018, Carrington notified Plaintiff he would need to make higher monthly payments to cover an increase in his homeowner's insurance premium. *Id.* ¶ 11. Plaintiff's monthly payment increased by $110.62 per month, from $2,231.21 to $2,431.83. *Id.* ¶ 20. Plaintiff alleges that he contacted his insurance company, which informed him his premium had not increased by that amount. *Id.* Plaintiff attempted to inform Carrington that "his mortgage account was being overcharged," but the company ignored his complaints. *Id.* ¶¶ 21–22, 41–43. Plaintiff began making the increased monthly payments, *id.* ¶ 31. Nevertheless, Carrington began

charging late fees and unauthorized charges to Plaintiff's account. *Id.* ¶ 25. Plaintiff does not allege with certainty the total amount of allegedly improper late fees and interest charges, but indicates one late fee was $975. *Id.*

Plaintiff suggests that, as part of the closing on his home, he agreed to place money in escrow for the payment of his property taxes and insurance. *Id.* ¶¶ 9, 45–46. He alleges that three individuals named Mark Martinez, Tolanda Talbot, and Katherine Davis assured him that his escrow payments "would be handled responsibly and accurately." *Id.* ¶ 45. Then, at least between 2019 and 2021, Carrington mishandled the money that Plaintiff placed in escrow for the payment of his insurance and property taxes. *Id.* ¶¶ 36–47. Plaintiff alleges that, at various points, Carrington overpaid or underpaid his insurance premium. *Id.* ¶¶ 36–37. In 2019, Carrington overpaid the insurance company by a total of $793.66. *Id.* ¶ 37. Carrington later underpaid the insurance company, using the "surplus in the [previously] overpaid insurance premium" to make up the difference. *Id.* ¶ 40. Plaintiff alleges Carrington "fraudulently stole" the overpaid insurance premium by underpaying the next year. *Id.* ¶ 39. Plaintiff made several phone calls to Carrington's customer service department, explaining that his account was being overcharged, but Carrington did not address the problem. *Id.* ¶¶ 41–42. Instead, it added fees and interest on fees to Plaintiff's account, "reported these fees to the credit bureau, and used this amount to file the foreclosure action." *Id.* ¶ 40.

On March 4, 2020, Plaintiff requested that Carrington defer his mortgage payment "like other banks were doing to help their customers as COVID relief." *Id.* ¶ 48. Carrington informed Plaintiff that it was not offering such deferments. *Id.* Nevertheless, Plaintiff alleges that on April 1, 2020, Carrington placed him on a "90 days forbearance plan" and advised him he did not have to make mortgage payments for 90 days. *Id.* ¶ 49. On July 9, 2020, Carrington extended Plaintiff's

COVID-related assistance for an additional three months. *Id.* ¶ 50.[1] In November 2021, Carrington again granted Plaintiff 90 days' forbearance. *Id.* ¶ 51. Plaintiff alleges that, as part of the COVID assistance program, Carrington assured him that no fees or penalties would be assessed during the forbearance periods. *Id.* ¶ 53. Nevertheless, Carrington continued to apply "fees or penalties" during the forbearance period. *Id.* ¶ 55. The fees included a "one-month late fee" of $975 on November 1, 2021, which Plaintiff alleges far exceeded the agreed-upon late fee in his mortgage contract. *Id.* ¶¶ 25, 27. Plaintiff further asserts that Carrington falsely reported to credit reporting agencies that he made late payments or missed payments altogether, causing his credit score to be "significantly lowered." *See id.* ¶¶ 16, 33. Finally, Plaintiff also alleges that Carrington filed for foreclosure while the mortgage was in forbearance. *See id.* ¶ 55 ("During the time period Carrington assured Brown a forbearance plan was in effect, Carrington . . . started the process for judicial foreclosure judgment order or sale during the forbearance period.").[2]

Since June 6, 2018, Carrington has "constantly called" Plaintiff in an attempt to collect on the allegedly fraudulent debt. ECF No. 31 ¶ 62. It has also sent him at least three to five notices of default and notices of intent to foreclose each month, while ignoring his "repeated efforts to explain the situation that Carrington was overcharging his mortgage account." *Id.* ¶ 60.

[1] It is unclear based on Plaintiff's allegations whether the July 9, 2020, extension extended Plaintiff's forbearance for three months or six months. *See id.* ¶ 50 ("On July 9, 2020 Carrington Customer Service Department advised Brown it extended the COVID-19 assistant for an additional 6 months. Carrington COVID-19 assistant stated: you will not be required to make regular monthly mortgage payment for another three consecutive months."). The Court assumes that, consistent with the other forbearance periods, the July 9, 2020 extension was effective for 90 days, though ultimately this issue is immaterial to resolution of the pending motions.

[2] Plaintiff's amended complaint alleges, and records of state court proceedings confirm, that Carrington initiated foreclosure proceedings in September of 2024. *See id.* ¶ 15; State of Connecticut Judicial Branch, Superior Court Case Look-Up, Case No. FBT-CV24-6138264-S, https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=FBTCV246138264S (last visited September 15, 2026). The Court notes that the amended complaint in the present action does not allege that Plaintiff's mortgage was in forbearance in September of 2024. However, because this distinction is not relevant to the ultimate resolution of the motion to dismiss, the Court need not resolve this inconsistency.

Unidentified individuals have also visited Plaintiff's residence, "inquiring on how to make a deal to purchase his property," and making rude comments. *Id.* ¶ 63.

B. Plaintiff's Unfair Trade Practices Action

Plaintiff filed suit against Carrington in Connecticut Superior Court in November of 2021, asserting that Carrington engaged in unfair trade practices prohibited by the Connecticut Unfair Trade Practices Act ("CUTPA"), negligent misrepresentation, negligence, and breach of contract. Plaintiff's CUTPA claim was dismissed at summary judgment, and Plaintiff withdrew his negligent misrepresentation claim at trial. After the close of evidence at trial, on March 6, 2026, a jury found that Carrington was not liable for Plaintiff's remaining two claims for breach of contract or negligence.[3]

C. The Foreclosure Action

As noted above, Plaintiff alleges that, from June 6, 2018 onwards, Carrington "constantly called" Plaintiff to collect upon its allegedly fraudulent debt. ECF No. 31 ¶ 62. At least three to five times a month, Carrington sent Plaintiff notices of default and notices of its intent to foreclose in its loan. *Id.*[4] Plaintiff alleges that Carrington "threaten[ed] the intent of filing foreclosure . . . with no intent of doing so." ECF No. 31 ¶ 61.

Then, in September 2024, Carrington filed for foreclosure in Connecticut state court. Plaintiff alleges that Carrington fraudulently leveraged its false overcharges and fees to file for foreclosure:

> On September 17, 2024 the defendant file[d] [a] foreclosure action against the plaintiff with an alleged unpaid balance, which . . .

---

[3] *See* State of Connecticut Judicial Branch, Superior Court Case Look-Up, Case No. FBT-CV21-5047334-S, https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=FBTCV215047334S (last visited September 15, 2026).

[4] The Court notes that Plaintiff's original complaint stated that Carrington initiated foreclosure in September of 2024 "without a notice of intent to foreclose the mortgage," ECF No. 1 ¶ 43, but accepts the allegations of the second amended complaint as true.

> amount accumulated as a result of [s]everal consecutive years, the defendant overpaying the plaintiff['s] insurance premium, the defendant fraudulent[ly] add[ing] incidental amount[s] to the plaintiff's mortgage account, the defendant adding unwarranted late fees to the plaintiff's account, the defendant adding excessive late fees to the plaintiff's account, the defendant fraudulently st[ealing] Brown's surplus overpaid insurance payment, and the defendant refus[ing] to accept the plaintiff's mortgage payment, all of which the defendant seeks to fraudulent[ly] use to take [possession] of the plaintiff's property.

*Id.* ¶ 17. Plaintiff further alleges that, despite its assurances that Plaintiff's mortgage was in forbearance due to COVID, "Carrington charge[d] Brown late payments and used the months it voluntarily place[d] Brown on COVID-19 Pandemic Forbearance Plan, combined with the fraudulent amount listed above to start foreclosure action against" him. *Id.* ¶ 18. Finally, although Plaintiff does not allege that his mortgage was under COVID-related forbearance in September of 2024, Plaintiff alleges that Carrington "started the process for judicial foreclosure judgment order or sale during the forbearance period." *Id.* ¶ 55.

The docket in the state-court foreclosure action, *Carrington Mortgage Services, LLC v. Brown*, Case No. FBT-CV24-6138264-S, indicates that judgment of foreclosure by sale was entered on April 27, 2026.[5]

D. <u>The Present Action</u>

Plaintiff filed this lawsuit on January 10, 2025. After granting Carrington's motion to dismiss Plaintiff's original complaint, the Court allowed Plaintiff leave to file an amended complaint with respect to his fraud claims and any Fair Credit Reporting Act ("FCRA") claim he wished to pursue. *See Brown*, 2025 WL 2783593, at *13. Plaintiff thereafter filed the amended complaint, in which he asserts three counts of fraud and one count of intentional infliction of

---

[5] *See* State of Connecticut Judicial Branch, Superior Court Case Look-Up, Case No. FBT-CV24-6138264-S, https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=FBTCV246138264S (last visited September 15, 2026).

emotional distress, and seeks compensatory and punitive damages. ECF No. 31. Carrington again moved to dismiss for lack of subject matter jurisdiction and failure to state a claim, *see* ECF No. 33-1; ECF No. 40. Plaintiff opposes the motion. *See* ECF No. 39. After briefing with respect to the motion to dismiss was complete, both the foreclosure action and the unfair trade practices action resolved in favor of Carrington. Plaintiff also filed a motion to amend his complaint a second time, ECF No. 51, which Carrington opposes, ECF No. 52. This Order addresses Carrington's motion to dismiss and Plaintiff's motion to amend.

## II. MOTION TO DISMISS

### A. Legal Standards

#### *1. Federal Rule of Civil Procedure 12(b)(1)*

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a case for lack of subject matter jurisdiction. A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence. *Id.* In assessing a motion to dismiss for lack of subject matter jurisdiction, the Court may refer to evidence outside of the pleadings. *Id.*

#### *2. Federal Rule of Civil Procedure 12(b)(6)*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

These pleading standards apply to self-represented parties. It is true that courts are under an obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted). But at the same time, a *pro se* complaint must meet the basic pleading standards outlined above to survive a motion to dismiss. *Fowlkes*, 790 F.3d at 387 (citing *Twombly*, 550 U.S. at 570).

B. Discussion

*1. Subject Matter Jurisdiction*

First, the Court finds that it has subject matter jurisdiction over the allegations in Plaintiff's amended complaint.

District courts are courts of limited jurisdiction; in general, a district court may not hear a case or controversy unless authorized under 28 U.S.C. §§ 1331 (federal question jurisdiction) or 1332 (diversity jurisdiction). This case does not "aris[e] under the Constitution, laws, or treaties of the United States," as Plaintiff asserts only common law claims for fraud and intentional infliction of emotional distress. *Cf.* 28 U.S.C. § 1331.

Thus, the Court considers whether it has diversity jurisdiction. Under 28 U.S.C. § 1332, diversity jurisdiction does not exist unless two requirements have been met. First, the "matter in controversy" must exceed "the sum or value of $75,000, exclusive of interest and costs[.]" 28 U.S.C. § 1332(a). Second, for purposes of this case, the dispute must be "between . . . citizens of different States[.]" *Id.* The party seeking to invoke diversity jurisdiction bears the burden to show that both requirements have been satisfied. *See Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998); *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) ("A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount") (citation and quotation marks omitted).[6]

---

[6] In response to Carrington's motion to dismiss, Plaintiff argues that he "already demonstrated the court has jurisdiction in this matter. Once a plaintiff demonstrate[s] that the court has jurisdiction, the Court does not lose jurisdiction because the complaint is amended." ECF No. 39 at 7. This is incorrect; the Court must assess whether it has jurisdiction over the amended complaint. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007) ("[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction.").

Carrington appears to concede that there is diversity of citizenship between Plaintiff and itself, but contends Plaintiff has failed to sufficiently allege the $75,000 amount in controversy threshold. *See* ECF No. 33-1 at 5. When a plaintiff pleads that the amount in controversy exceeds $75,000, the Second Circuit recognizes "'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.'" *Chambers v. Conn.*, No. 3:24-CV-1454 (KAD), 2025 WL 1332989, at *4 (D. Conn. May 7, 2025) (quoting *Scherer v. Equitable Life Assurance Soc'y of United States*, 347 F.3d 394, 397 (2d Cir. 2003)). To overcome the "face-of-the-complaint presumption," Carrington must show "to a legal certainty that the amount recoverable does not meet the jurisdictional threshold," which is a "high bar." *Scherer*, 347 F.3d at 397 (quotation marks and citation omitted). Furthermore, doubts regarding the likelihood of recovery of the threshold amount are resolved in favor of the plaintiff. *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 229 (2d Cir. 2017).

Read in accordance with the "special solicitude" the Court must afford to *pro se* litigants, *see Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), the amended complaint adequately pleads that Plaintiff's claims meet the $75,000 amount in controversy requirement. *See* ECF No. 31 ¶ 6 (alleging that "more than $75,000 exclusive of interest and costs, is at stake"). While it is true that "[a] plaintiff seeking to invoke diversity jurisdiction cannot meet its burden of proof with mere conclusory allegations of indirect or speculative value," *see Chavez v. Maker*, No. 1:18-CV-07965 (RA) (GWG), 2019 WL 4926348, at *4 (S.D.N.Y. Oct. 7, 2019) (internal citation and quotations omitted), Plaintiff's allegations are more than merely speculative.

First, Plaintiff asserts direct damages. Plaintiff asserts that he was injured when Carrington wrongfully increased his mortgage payment by a total of $110.62 per month and charged him unspecified excessive late fees and interest in violation of his mortgage agreement. ECF No. 31

¶¶ 14, 20, 24–25. Carrington also allegedly charged unwarranted late fees and penalties during a period where Plaintiff's loan was supposed to be in forbearance, and falsely reported that Plaintiff was delinquent in his mortgage payments, causing his credit score to drop "significantly." *Id.* ¶¶ 55, 58. Plaintiff further alleges that Carrington mishandled his escrow payments, overcharging him on multiple occasions and stealing the surplus. *Id.* ¶¶ 37–38. Finally, Plaintiff alleges that Carrington intentionally caused him to suffer harassment, resulting in "emotional and/or mental distress." *Id.* ¶¶ 58, 60–63. While specific overcharges and fees Plaintiff references in his complaint almost certainly do not exceed the required amount in controversy, Plaintiff indicates that he intended them to serve as examples of Carrington's fraudulent conduct—and he need not provide an itemized list of each and every improper charge to adequately plead the existence of diversity jurisdiction. *See DeMatteo v. Walgreen E. Co., No*. 3:23-CV-943 (JAM), 2024 WL 3566182, at *3 (D. Conn. July 29, 2024) ("a plaintiff need not allege a specific number to meet the amount-in-controversy threshold") (citation omitted) (cleaned up). And compensatory damages for emotional distress "result[] in a wide range of permissible awards," supporting application of the rebuttable presumption here. *Kwolek v. NRT New England LLC*, No. 3:23-CV-1065 (JCH), 2023 WL 7282364, at *6 (D. Conn. Nov. 3, 2023).

Plaintiff further asserts consequential damages. For instance, Plaintiff alleges that he was harmed beyond the amount that Carrington fraudulently overcharged him—including inaccurate increased charges, fees, penalties, and "stolen" overpayments—to include the value of his mortgage, which has now been foreclosed, and the potential loss of his home. *See* ECF No. 31 ¶ 8 (Plaintiff borrowed $216,000); *id.* ¶ 52 ("Carrington charge[d] Brown late payments and used the months it voluntarily place[d] Brown on COVID-19 Pandemic Forbearance Plan, combined with the fraudulent amount added to Brown's mortgage payments to start foreclosure action

against Brown"); *see also* ECF No. 39 at 7 ("[T]he amount added up to $281,866.42, which Carrington used to file foreclosure on Brown's loan . . . Carrington appraised Brown's property at $650,000."). Plaintiffs alleging common-law fraud are generally entitled to recover consequential damages. *See Patriot Expl., LLC v. SandRidge Energy, Inc.*, No. 3:11-CV-1234 (AWT), 951 F. Supp. 2d 331, 347 (D. Conn. 2013) (citation omitted). Now that Plaintiff's mortgage has been foreclosed and he faces imminent (or actual) loss of his home, such damages allegations are properly considered in determining whether he has satisfied the amount in controversy requirement. *See Reale v. Providence & Worcester R.R. Co.*, No. 3:23-CV-00990 (JAM), 2024 WL 1327203, at *4 (D. Conn. Mar. 28, 2024) (in assessing amount in controversy, a court must "count only the allegations that suggest a concrete, particularized, and actual or imminent injury to Plaintiff himself").

The Court acknowledges that Plaintiff's consequential damages theory may be far-fetched, but it cannot conclude to a "legal certainty" that Plaintiff's allegations fail to reach the $75,000 threshold. *See Scherer*, 347 F.3d at 397. Taken together, Plaintiff's alleged injuries plausibly exceed the $75,000 threshold required for the Court to exercise jurisdiction over Plaintiff's claims. Accordingly, reading the complaint broadly, the Court finds that it has diversity jurisdiction over this matter.

*2. Failure to State a Claim*

The Court concludes that Plaintiff's amended complaint fails to state claims for fraud or intentional infliction of emotional distress.

To start, Plaintiff alleges three claims for fraud. In addition to satisfying the pleading standard under Federal Rule 12(b)(6), a claim for fraud must meet the heightened pleading standards set forth in Federal Rule 9(b) as well as the requirements established under Connecticut law. *See, e.g.*, *Baranowski v. Parker*, No. 3:16-CV-01816 (VAB), 2018 WL 3626321, at *3 (D.

Conn. July 30, 2018) (applying Rule 9(b)'s requirements to common law fraud claims). To survive a motion to dismiss, a complaint must, with sufficient particularity, "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021) (citation omitted). "Malice, intent, knowledge, and other conditions of a person's mind," however, "may be alleged generally." Fed. R. Civ. P. 9(b). Moreover, "[a]lthough a plaintiff may plead generally the requisite fraudulent intent, he must allege facts giving rise to a strong inference of fraudulent intent, which may include facts showing that the defendant(s) had both motive and opportunity to commit fraud, or facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *E. Point Sys., Inc. v. Steven Maxim, S2k, Inc.*, No. 3:13-CV-215 (VAB), 133 F. Supp. 3d 430, 434 (D. Conn. 2015) (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006)).

Under Connecticut law, fraud consists of "deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed." *Weinstein v. Weinstein*, 275 Conn. 671, 685 (2005). The elements of a fraud action are: "(1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." *Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC*, No. 3:09-CV-1546 (MRK), 739 F. Supp. 2d 109, 114 (D. Conn. 2010).[7]

[7] Plaintiff's opposition to Carrington's motion to dismiss contains several factual allegations that do not appear in the amended complaint. Because the Court may consider only the allegations of the operative complaint in deciding a motion to dismiss, the Court does not consider these additional allegations. *See Arias v. E. Hartford*, Case No. 3:20-CV-895 (JCH), 2021 WL 3268846, at *9 n.5 (D. Conn. July 30, 2021).

a. Count One

Count One of the amended complaint alleges that Carrington defrauded Plaintiff through the issuance of false and knowingly inflated monthly mortgage billing statements. *See* ECF No. 31 ¶ 29. Plaintiff fails to sufficiently plead a claim for fraud in Count One because he does not meet the heightened pleading standard of Fed. R. Civ. P. 9(b), and because he fails to plausibly allege that Carrington knowingly made an untrue statement.

To start, the Court acknowledges that Count One of the amended complaint satisfies the first, third, and fourth elements of common law fraud. First, it alleges that Carrington made a false statement of fact regarding an increase in his home insurance rate. Plaintiff's monthly mortgage statement reflected an increase from $2,231.21 to $2,341.83, and that Carrington's customer service department "stated the insurance increase[d,] so Carrington increase[d] the mortgage payment." ECF No. 31 ¶ 20. Plaintiff's allegations do not simply state that the statement was false in a conclusory manner; Plaintiff alleges that he contacted his insurance company and discovered the insurance rates did not increase by the amount stated. *Id.* As to the third element, Plaintiff alleges that Carrington made the statements with the intent of inducing his reliance. Because Carrington sent Plaintiff monthly billing statements reflecting the higher amount, *id.* ¶¶ 20, 22, it is reasonable to conclude that Carrington intended to induce Plaintiff to rely on the billing statements and tender the increased payment. Finally, as to the fourth element, Plaintiff alleges

that he detrimentally relied upon the allegedly false statements by paying the inflated monthly charges. *Id.* ¶ 31.[8]

But Plaintiff fails to allege the third element of fraud: that the "statement was untrue and known to be so by its maker." *Master-Halco, Inc.*, 739 F. Supp. 2d at 114. Plaintiff makes conclusory assertions that Carrington "knew [of] the falsity of the Monthly Mortgage Billing Statement" because Plaintiff repeatedly "informed Carrington Customer Service Department his mortgage account was being overcharged." ECF No. 31 ¶ 29. While Plaintiff may plead knowledge "generally," Fed. R. Civ. P. 9(b), "he must allege facts giving rise to a strong inference of fraudulent intent," such as facts indicating "both motive and opportunity to commit fraud," or "strong circumstantial evidence of conscious misbehavior or recklessness." *E. Point Sys., Inc.*, 133 F. Supp. 3d at 434. Plaintiff alleges that "Carrington continued to send the false Monthly Mortgage Billing Statement to [Plaintiff] solely to defraud [him] and lure him to continue making mortgage payments," made representations "with the intent to induce the plaintiff into taking the representation in the Monthly Mortgage Biling Statement as true," and acted with fraudulent intent. ECF No. 31 ¶¶ 29–30. But these allegations are conclusory. Moreover, Plaintiff alleges that

[8] Carrington argues that Plaintiff should be judicially estopped from making this allegation because Plaintiff's original complaint indicated that he made payments of $2,231.21, rather than $2,341.83, in May and June of 2018, and because the Court relied on these allegations in its Order on the first motion to dismiss. *See* ECF No. 33 at 10–11 (citing *Brown*, 2025 WL 2783593, at *11; Compl., ECF No. 1 ¶ 26). "Typically, judicial estoppel will apply if: 1) a party's later position is clearly inconsistent with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel . . . We further limit judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *DeRosa v. National Envelope Corp.,* 595 F.3d 99, 103 (2d Cir. 2010) (citation omitted; internal quotation marks omitted); *see also New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (judicial estoppel "protect[s] the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment"). While Plaintiff's current position that he paid the increased monthly charges in the two months at issue appears to contradict his previous allegations, which were adopted by the Court for purposes of assessing Carrington's first motion to dismiss, this is not "clearly inconsistent" with his earlier position: Plaintiff theoretically could have paid the lower amount in May and June and began making higher payments thereafter. And because Count One fails for independent reasons, Plaintiff derives no "unfair advantage" at this stage of the litigation, nor would Plaintiff's shifting allegations risk "inconsistent results" with an impact on judicial integrity. *See DeRosa*, 595 F.3d at 103.

Carrington represented that the billing statements reflected the correct amount he owed, *id.* ¶ 22; this allegation defeats any inference that Carrington *knowingly* made a false representation to Plaintiff. In sum, Plaintiff does not allege facts indicating "motive and opportunity," nor "strong circumstantial evidence of conscious misbehavior or recklessness," *E. Point Sys., Inc.*, 133 F. Supp. 3d at 434, such that Count One can survive dismissal.

Additionally, Count One does not meet the heightened pleading requirements of Rule 9(b). Plaintiff does not sufficiently identify the speaker of the allegedly false statements. *In re Synchrony Fin. Sec. Litig.*, 988 F.3d at 167. Fed. R. Civ. P. 9(b) requires, "at a minimum, that the plaintiff identify the speaker of the allegedly fraudulent statements." *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 265 (2d Cir. 1993). Reliance on "unnamed corporate sources" is insufficient. *Frazier v. VitalWorks, Inc.*, No. 3:03-CV-358 (JBA), 341 F. Supp. 2d 142, 151 (D. Conn. 2004); *see also In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 265 (2d Cir. 1993) (refusing to "sanction[] the pleading of fraud through completely unattributed statements, even when the plaintiff alleges on information and belief that the unattributed statement was made by an agent of the defendant"). Further, with respect to the allegedly false statement regarding the reason for the increased monthly bill, Plaintiff does not state "where and when the statements were made," *In re Synchrony Fin. Sec. Litig.*, 988 F.3d at 167, but simply alleges that "Carrington Customer Service Department" informed him when he called them. ECF No. 31 ¶ 20. To the extent Plaintiff asserts that Carrington made further actionable misrepresentations by telling him that "the mortgage account and billing statement reflects the correct amount," *id.* ¶ 22, and by repeatedly sending him "false monthly mortgage billing statement[s], notices of default letters and notice of intent to foreclose on the mortgage," *id.* ¶ 30, Plaintiff likewise fails to identify the speaker, time, or place of any of these statements. Accordingly, Count One cannot succeed.

b. Count Two

Plaintiff has likewise failed to sufficiently plead the elements of a claim of fraud in Count Two.

In Count Two, Plaintiff alleges that, "on or before December 22, 2017," Carrington's representatives "elected to take over the responsibility from [Plaintiff] of making insurance disbursement payment[s]" and "assured [Plaintiff] his escrow payments would be handled responsibly and accurately." ECF No. 31 ¶ 45. In reliance on those statements, Plaintiff gave permission for Carrington to "make timely and accurate insurance and property tax payments." *Id.* ¶ 46. Plaintiff further alleges that, after closing, "Carrington overpaid the insurance premium then stole the surplus in the overpaid insurance policy." *Id.* ¶ 47.

As an initial matter, the challenged statement in Count Two is not a "false representation" made "as a statement of fact." *Master-Halco, Inc.*, 739 F. Supp. 2d at 114. A promise to handle payments "responsibly and accurately" is not a statement of objective fact, but a promissory representation, which generally supports a claim for breach of contract, not fraud. *United States Reg'l Econ. Dev. Auth., LLC v. Matthews*, No. 3:16-CV-1093 (CSH), 2017 WL 5992384, at *7 (D. Conn. Dec. 4, 2017) (distinguishing "between future promises (duplicative of a breach of contract claim) and representations of present fact (supportive of a fraudulent inducement claim if knowingly false when made)."). In its Order granting Carrington's first motion to dismiss, *see Brown*, 2025 WL 2783593, at *8 n. 7, the Court declined to construe Plaintiff's claims as asserting breach of contract. Here, as in its prior Order, the Court notes that Plaintiff's state court unfair trade practices complaint suggests his familiarity with breach of contract claims and indicates that he could have asserted such claims at the federal level if he chose to. *See id.* Further, neither the original nor the amended complaint provides reasonable notice to Carrington that it is being sued

under any legal theory other than fraud. *Id.* Accordingly, the Court evaluates Plaintiff's allegations in Count Two under the framework of common law fraud.

Assuming *arguendo* that the statement that Carrington would handle the escrow payments "responsibly and accurately" is a misrepresentation of fact, *see Matthews*, *LLC*, 2017 WL 5992384, at *7 ("a promise not contained in the written agreement made with a preconceived and undisclosed intention of not performing it . . . constitutes a misrepresentation for purposes of a fraud in the inducement cause of action"), Count Two also asserts the third and fourth elements of a fraud claim. As with Count One, the Court infers intent to induce reliance in the language of the relevant statement: the promise to handle escrow payments responsibly was plausibly made to convince Plaintiff to place funds in escrow. And Plaintiff alleges that he relied on the statement to his detriment. *See* ECF No. 31 ¶ 46 ("Brown relied on the misrepresentations, that Carrington would handle his escrow payment responsibly. As a result of that trust Brown relinquishe[d] the responsibility to make timely and accurate insurance and property tax payments to Carrington . . . ln an attempt to be in good standing with his mortgage, and as a result of the overcharge, Brown increase[d] his mortgage payments to Carrington.").

However, Plaintiff does not allege that Carrington knew its promise was false. Just as false statements of fact cannot support a claim of fraud without a showing of the speaker's knowledge, a promissory representation does not form a basis for a claim sounding in fraud unless accompanied by an intent not to perform at the time the promise was made. *See Matthews*, *LLC*, 2017 WL 5992384, at *7. To be sure, Plaintiff alleges that Carrington failed to make good on its commitment to handling his escrow payments responsibly. But mere "proof that a promise was made and that it was not fulfilled" alone is insufficient to prove fraud. *U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 659 (2d Cir. 2016) (quotation omitted); *Snow v.*

*Howard Motors, Inc.*, 3 Conn. Cir. Ct. 702, 709 (1966) ("[N]onperformance of a promise is not in itself evidence establishing fraud or a lack of intent to perform"); *Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.,* No. 3:08-CV-1958 (CFD), 2010 WL 1882316, at *5 (D. Conn. May 10, 2010) ("[T]he allegedly defrauded party must allege specific facts from which a reasonable trier of fact could directly or indirectly infer that the promisor intended not to honor his obligations *at the time the promise was made*.") (emphasis in original; citation omitted).

Plaintiff does not assert any facts indicating that the speakers did not intend to fulfil the promise at the time it was made. Count Two contains no direct or circumstantial allegations of fraudulent intent. Plaintiff alleges that, after he reported the alleged erroneous insurance payments, "Carrington knew or should have known Brown's mortgage account was being overcharge[d]," but failed to investigate his claims, and "continue[d] to overcharge[] Brown's mortgage account year after year, while it insist[ed] that Brown make the overcharge amount." ECF No. 31 ¶¶ 41–43. But allegations of Carrington's carelessness—or, indeed, even its "reckless disregard," *id.* ¶ 43, of the fact that it was underpaying or overpaying Plaintiff's insurance premiums—does not amount to fraudulent intent contemporaneous with the statement attributed to Martinez, Talbot, and Davis.

Additionally, Count Two does not meet the heightened pleading requirements imposed by Fed. R. Civ. P. 9(b). Plaintiff fails to plead with particularity the identity of the speaker, and "where and when the [relevant] statements were made." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d at 167. Plaintiff alleges that "individuals" overseeing the closing on his property, "Mark Martinez, Tolanda Talbot and Katherine Davis[,] . . . assured [him] his escrow payments would be handled responsibly and accurately," but does not offer details about the time or place of the statement (nor of these individuals' relationship to Carrington). ECF No. 31 ¶ 45. Plaintiff attributes Martinez,

Talbot, and Davis's statements to Carrington without alleging that these individuals were associated with the company. *Id.* And even if he had made such an allegation, the "grouping together of the purported speakers of the allegedly fraudulent misrepresentations fails to put [Carrington] on notice of [its] role in the fraud, if any, and thereby fails to fulfill the purpose behind the requirement for particularized pleading." *Matthews*, 2017 WL 5992384, at *6.

For these reasons, Plaintiff does not state a claim in Count Two.

c. Count Three

Count Three also fails to state a claim.

In Count Three, Plaintiff alleges that, on April 1, 2020, Carrington placed him on a "90 days forbearance plan and advised Brown he did not have to make mortgage payments for 90 days." ECF No. 31 ¶ 49. Carrington further informed Plaintiff that "no fees or penalties would be assessed during the forbearance period," and that it would not "make the first notice or filing . . . for any judicial or non-judicial foreclosure" or "move for foreclosure judgment . . . during the forbearance period." *Id.* In July of 2020 and November of 2021, Carrington twice extended the forbearance plan for three months, and made similar representations that it would not impose fees or file for foreclosure during the forbearance. *Id.* ¶¶ 50–51. Plaintiff relied on these statements and did not make mortgage payments for three months. *Id.* ¶ 57. Plaintiff alleges that, despite Carrington's representations, it "did not defer mortgage payments," "charge[d] . . . late payments," and "used the months it voluntarily place[d]" Plaintiff on the forbearance plan to initiate a foreclosure action against him. *Id.* ¶¶ 52–55.

Count Three asserts fraud based on Carrington's alleged failure to adhere to its own future promises—in this case, to hold Plaintiff's mortgage in forbearance and excuse missed payments. Like Count Two, the Court may infer intent to induce reliance based on Carrington's promise. And Plaintiff alleges that he relied on Carrington's promises to his detriment. ECF No. 31 ¶ 57

("Brown reasonably relied on Carrington's Customer Service Department representation that . . . he was not required to make regular monthly mortgage payment for three consecutive months. As a result of the representation made to Brown, he did not make mortgage payments for the three months.").

But Count Three, like Counts One and Two, fails to allege the second required element of common law fraud. Plaintiff does not "allege specific facts from which a reasonable trier of fact could directly or indirectly infer that the promisor intended not to honor his obligations at *the time the promise was made*." *See Aviamax Aviation Ltd.*, 2010 WL 1882316, at *5. Plaintiff alleges, in conclusory fashion, that "[a]t the time Carrington made these false representations to Plaintiff, Carrington knew them to be false because Carrington knew it did not intend to live up to the representations made to [Plaintiff]. Indeed, Carrington made these false representations solely to defraud [Plaintiff] and lure him to rely on the false representations." ECF No. 31 ¶ 54. But the amended complaint does not set forth any non-conclusory allegations suggesting that Carrington knew its promise was false from the start. Plaintiff himself suggests that similar deferments were undertaken to "help . . . customers as COVID relief," and makes no allegations supporting an inference that Carrington offered deferment for any other reason or made the statement with no intent to keep its promises. ECF No. 31 ¶ 48. Rather, Plaintiff simply alleges that, after it ostensibly placed his mortgage in forbearance, Carrington added fees and improper charges to his account, and reported late payments to credit bureaus. This is insufficient to plead a lack of present intent to perform the promise at the time it was made. *See E. Point Sys., Inc.*, 133 F. Supp. 3d at 435; *Snow*, 3 Conn. Cir. Ct. at 709; *Aviamax Aviation Ltd.*, 2010 WL 1882316, at *5.

Count Three also fails to meet the heightened pleading standard imposed by Fed. R. Civ. P. 9(b). Here, as in Count One, Plaintiff alleges that "Carrington Customer Service Department"

made the relevant representations, relying on "unnamed corporate sources" rather than identifying the speaker with specificity. *See Frazier*, 341 F. Supp. 2d at 151. While Plaintiff provides specific dates for two of the three allegedly fraudulent statements referenced in Count Three, *see* ECF No. 31 ¶ 49–51, he also does not explain where (or how) the statements were communicated to him. *See In re Synchrony Fin. Sec. Litig.*, 988 F.3d at 167.

Accordingly, Count Three fails to state a claim.

d. Count Four

Finally, the amended complaint fails to state a claim for intentional infliction of emotional distress. The Court granted Plaintiff leave to amend only as to his fraud claims and FCRA claim. *See Brown*, 2025 WL 2783593, at *13. It did not grant leave to assert a claim for intentional infliction of emotional distress. Regardless, Plaintiff fails to state such a claim, and Count Four must be dismissed.

To state a claim for intentional infliction of emotional distress, Plaintiff must plausibly allege: "(1) that the [defendant] intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Strano v. Azzinaro*, 188 Conn. App. 183, 187 (2019) (citation omitted).

Even assuming that the amended complaint alleges that Carrington intended to inflict emotional distress and that Carrington's conduct caused Plaintiff severe emotional distress, Plaintiff has not plausibly pled that any of Carrington's conduct was extreme or outrageous. As the Connecticut Supreme Court has explained:

> Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society . . . Liability has been found only where the conduct has been so outrageous in character, and

> so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Appleton v. Board of Educ.*, 254 Conn. 205, 210–11 (2000) (citations and internal quotation marks omitted) (quoting W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 12, p. 60, and 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965)). "The standard in Connecticut to demonstrate extreme and outrageous conduct is stringent." *Huff v. W. Haven Bd. of Educ.*, 10 F. Supp. 2d 117, 122 (D. Conn. 1998).

Carrington's challenged conduct is not "extreme" or "outrageous." Carrington's conduct involves allegedly false monthly billing statements and failure to fulfill promises made to Plaintiff. Plaintiff further alleges that "Carrington called the plaintiff several times a day, harassing and threatening him for nearly three years, demanding payment on debts . . . [and] threaten[ing] Brown with notice that it intends to foreclose," as well as sending notices of default at least "three to five" times per month. ECF No. 31 ¶¶ 60, 62. But attempting to collect on a debt by repeatedly calling a debtor, even at unusual hours of the day, is not outrageous. *See Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (applying New York law); *Errato v. Bendett & McHugh, PC*, No. 3:23-CV-1674 (OAW), 2025 WL 1475508, at *6 (D. Conn. May 21, 2025) (applying Connecticut law and finding that "repeatedly mailing letters demanding payment and threatening legal action, continuing to prosecute the foreclosure action, reporting negatively to credit bureaus, and misstating costs related to the disclosure action" did not constitute extreme or outrageous behavior). Nor is pursuing a foreclosure action. *See id.* ("Even though Defendants' actions threatened to dispossess Plaintiff of his home, their actions were not so atrocious as to subject them to liability for intentional infliction of emotional distress.") (citation and quotation marks omitted).

Finally, although Plaintiff alleges "people [are] showing up at [his] residen[ce] inquiring on how to make a deal to purchase his property; some of whom inspect the property and make rude comments when Brown shows no interest," ECF No. 31 ¶ 63, he fails to connect these events and comments to Carrington. In any event, "rude comments" are neither extreme nor outrageous. *See Miner v. Cheshire*, No. 3:99-CV-2334 (SRU), 126 F. Supp. 2d 184, 195 (D. Conn. 2000) (Connecticut courts generally hold that "insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings do not support a claim for intentional infliction of emotional distress") (citation omitted). Accordingly, Count Four fails to state a claim.

e. Preemption

Although Plaintiff does not allege a standalone state common law claim related to Carrington's alleged reporting of false information to various credit bureaus—and, indeed expressly disclaims he is bringing such a claim in his opposition brief, *see* ECF No. 39 at 9—Carrington is correct that any such state law claim would be preempted by the FCRA. *See* 15 U.S.C. § 1681t(b)(1)(F); *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 48 (finding the FCRA preempted state common law tort claims).

f. Statute of Limitations

Finally, because the Court finds that none of the counts asserted in the amended complaint state a claim upon which relief can be granted, it does not reach Carrington's argument that Counts Two and Three of the amended complaint are barred by Connecticut's statute of limitations for tort claims.

## III. LEAVE TO AMEND

The Court next addresses Plaintiff's pending motion for leave to amend and the attached proposed second amended complaint ("SAC"), ECF No. 51. As explained below, none of the

Counts in Plaintiff's proposed SAC plausibly state a claim for relief, and further leave to amend will not be granted.

A. <u>Legal Standard</u>

A plaintiff may amend his complaint once, as a matter of course, within 21 days after serving it, or within 21 days after the service of a responsive pleading or a motion to dismiss under Fed. R. Civ. P. 12(b), (e), or (f). Fed. R. Civ P. 15(a)(1). Outside of these enumerated circumstances, however, a plaintiff seeking to amend must either move the court for leave or obtain the opposing party's written consent for an amendment. Fed. R. Civ. P. 15(a)(2).

Rule 15(a)(2) is a generally lenient standard, under which "[t]he court should freely give leave [to amend] when justice so requires." *Id.* Courts will deny a proposed amendment under Rule 15(a)(2) only "upon a showing of 'undue delay, bad faith, dilatory motive, or futility.'" *Sacerdote v. New York University*, 9 F.4th 95, 115 (2d Cir. 2021). An amendment is futile if it "could not withstand a motion to dismiss" under Rule 12(b)(6). *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164–65 (2d Cir. 2015) (citation omitted). "Put differently, a proposed claim is futile if, accepting the facts alleged by the party seeking amendment as true and construing them in the light most favorable to that party, it does not 'plausibly give rise to an entitlement to relief.'" *Brach Fam. Found., Inc. v. AXA Equitable Life Ins. Co.*, No. 16-CV-740 (JMF), 2018 WL 1274238, at *1 (S.D.N.Y. Mar. 9, 2018) (quoting *Iqbal*, 556 U.S. at 679). Allegations that are "legal conclusions, [or] threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not alone be sufficient to survive a motion to dismiss. *Balintulo*, 796 F.3d at 165 (citation omitted). "The party opposing a motion to amend bears the burden of establishing that amendment would be futile." *Brach Fam. Found., Inc.*, 2018 WL 1274238, at *1.

B. Discussion

Plaintiff sought to amend his complaint after the motion to dismiss had been fully briefed and after the time to amend as a matter of right had elapsed. The Court thus evaluates his motion under the standard set by Fed. R. Civ. P. 15(a)(2), and concludes the proposed amendment is futile.

*1. The Proposed Amended Complaint*

Plaintiff's proposed SAC, ECF No. 51-2, purports to add additional factual allegations supporting the three fraud claims he alleged in the amended complaint, and also adds a fourth common law fraud claim (alleged in Count Three of the proposed SAC) based on allegedly fraudulent statements made by Carrington in annual escrow account disclosure statement projections. *See* ECF No. 51-2 at 12–18. Plaintiff retains the claim for intentional infliction of emotional distress. *Id.* at 18–20. Finally, Plaintiff seeks to add four additional new claims: Count Six (fraud upon the court that adjudicated the foreclosure action); Count Seven (abuse of process, based on Carrington's actions in the foreclosure litigation); Count Eight (vicarious liability based on Carrington's retaining of a law firm to prosecute the foreclosure action, which allegedly failed to properly appear and comply with various state law procedural requirements); and Count Nine (violation of the FCRA). *Id.* at 20–25.

Carrington opposes the motion for leave to amend, contending that the Court lacks subject matter jurisdiction based on the *Rooker-Feldman* doctrine, because Plaintiff is challenging the state court's judgment of strict foreclosure; that certain of Plaintiff's claims are barred by *res judicata*, applicable statutes of limitations, and the litigation privilege; and that, in any event, the proposed SAC fails to state viable claims for relief. Def.'s Opp. Br., ECF No. 52. The Court addresses these arguments in turn.

*2. Rooker-Feldman*

First, the claims asserted in Plaintiff's proposed amended complaint are not barred by the *Rooker-Feldman* doctrine. Under the *Rooker-Feldman* doctrine, federal courts lack jurisdiction over cases that amount to appeals of state court judgments. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005). There are "four requirements for the application of *Rooker-Feldman*: (1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment, (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (internal citation and quotation marks omitted).

Three of the four requirements are met here. Plaintiff lost in the state court foreclosure proceeding and unfair trade practices action, and his proposed amended claims certainly invite review and rejection of those judgments, especially insofar as Plaintiff alleges the foreclosure judgment was obtained through fraud on the state court. And *Rooker-Feldman* has been applied to bar new claims asserted in an amended complaint subsequent to a state court judgment. *See Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 273–74 (E.D.N.Y. 2009). But the Court cannot find that Plaintiff "complains of injuries *caused* by the state court judgment." *See Vossbrinck*, 773 F.3d at 426. *Rooker-Feldman* does not "bar claims based on an opponent's misconduct that precedes the state court proceeding, if the plaintiffs' alleged injuries were merely ratified by the state-court judgments rather than caused by them." *Hunter v. McMahon*, 75 F.4th 62, 71 (2d Cir. 2023) (citation and internal quotation marks omitted), *abrogated on other grounds by T.M. v. Univ. of Maryland Med. Sys. Corp.*, 608 U.S. __, 146 S. Ct. 1739 (2026). It is clear that *Rooker-Feldman* does not apply here wholesale, because Plaintiff complains primarily of Carrington's conduct leading up to and including its initiation of the foreclosure proceeding, rather than the

foreclosure judgment itself. "Plaintiff seeks to recover for Defendant's purported misconduct; although this conduct was reviewed by and ratified by [the state court], it was not caused by" the state court judgments. *See Kutty v. Fleming*, No. 24-CV-987 (SFR), 2025 WL 2783576, at *4 (D. Conn. Sept. 30, 2025).

Thus, the Court is not divested of subject matter jurisdiction over the proposed SAC.

*3. Claim Preclusion*

Counts One, Two, Three, Four, Six, Seven, and Eight of the proposed SAC are, however, barred by the doctrine of *res judicata*, or claim preclusion.

The doctrine of claim preclusion provides that "a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them." *Mazziotti v. Allstate Ins. Co.*, 240 Conn. 799, 812 (1997); *see also Vandever v. Emmanuel*, No. 3:06-CV-184 (JBA), 606 F. Supp. 2d 253, 254 (D. Conn. 2009) ("*Res judicata*, or claim preclusion, means that a party may not split causes of action that could be brought and resolved together") (internal quotation marks and citation omitted). Federal courts consistently accord preclusive effect to state court judgments. *Allen v. McCurry*, 449 U.S. 90, 95–96 (1980) (internal citations omitted). Thus, "res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id.* at 94.

Under Connecticut law, a party must satisfy four elements to establish the application of *res judicata*: "(1) the judgment must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have been an adequate opportunity to litigate the matter fully; and (4) the same underlying claim must be at issue." *Girolametti v. Michael Horton Assocs., Inc.*, 332 Conn. 67, 75 (2019). In determining whether claim preclusion should apply to bar subsequent claims, most

Connecticut courts analyze whether the subsequent claims "arise from the same transaction that formed the basis of the prior action" such that they could have been asserted, as claims or counterclaims, in the prior action. *Tanasi v. CitiMortgage, Inc.*, No. 3:16-CV-00727 (VAB), 257 F. Supp. 3d 232, 255–256 (D. Conn. 2017) (citation omitted; collecting cases). Regardless of the "legal theory . . . advanced" in each suit, the claims are "deemed to be duplicative for purposes of *res judicata"* where "the factual predicate[s] upon which claims are based are substantially identical." *See Stewart v. Transp. Workers Union of Greater New York, Loc. 100*, 561 F. Supp. 2d 429, 438 (S.D.N.Y. 2008) (citing *Berlitz Sch. of Languages of Am., Inc. v. Everest House,* 619 F.2d 211, 215 (2d Cir. 1980). When applying the "transaction test" in the foreclosure context, courts require "only that the subject of the [subsequent claims] have a sufficient connection to the making, validity or enforcement of the note and mortgage." *Tanasi*, 257 F. Supp. 3d at 257 (quoting *CitiMortgage, Inc. v. Rey*, 150 Conn. App. 595, 605 (2014).

Here, the first three elements of claim preclusion are easily met. There was a state court judgment of foreclosure; the parties to that action were Plaintiff and Carrington; and the foreclosure action was litigated fully, through a jury verdict.

As for the final element, several of Plaintiff's claims in the proposed amended complaint are sufficiently connected to the foreclosure action, such that they are barred by claim preclusion. *See id.*; *see also Chestnut v. Wells Fargo Bank, N.A.*, No. 10-CV-4244 (JS) (ARL), 2011 WL 838914, at *3 (E.D.N.Y. Mar. 2, 2011) (finding that claim preclusion applied to bar claims that were, or could have been, "raised as claims or defenses in the previous action") (citing *Swiatkowski v. Citibank*, No. 10-CV-114, 2010 WL 3951212, at *15 (E.D.N.Y. Oct. 7, 2010) and collecting other cases). Counts One, Two, Three, and Four of the proposed SAC—alleging that Carrington committed fraud by improperly applying Plaintiff's payments, imposing unauthorized late fees,

issuing inaccurate or misleading escrow disclosure statements that failed to account for changes to Plaintiff's property tax and insurance payments, and failing to properly accord COVID-19-related forbearance, were litigated in the foreclosure action as defenses.[9] Plaintiff asserted these facts at each stage in the foreclosure litigation. *See* ECF No. 52-3 at 1–28 (Plaintiff's motion to open and vacate the judgment of foreclosure, arguing that Carrington mishandled Plaintiff's payments, charged unauthorized late fees, issued escrow disclosure statements containing inaccurate tax and insurance information, and failed to accord COVID-19 forbearance); *see also* ECF No. 52-4 at 2 (Plaintiff's answer in the foreclosure action asserting, as affirmative defenses, that Carrington "committed fraud with regard to the plaintiff's mortgage payment" and lacked standing due to "unclean hands"); Case No. FBT-CV24-6138264-S, Dkt. No. 101.00, (Plaintiff's motion to dismiss the foreclosure action, asserting the same arguments); *id.*, Dkt. No. 131.00 (Plaintiff's objection to Carrington's motion for summary judgment, asserting the same arguments). The Superior Court rejected Plaintiff's arguments at every step. *See id.* Dkt. No. 101.10 (denying motion to dismiss); Dkt. No. 131.10 (overruling objection to motion for summary judgment); Dkt. No. 158.10 (denying motion to open and vacate judgment). These allegations against Carrington have been repeatedly litigated, and were asserted as defenses to enforcement of the note and mortgage; they are thus barred, despite Plaintiff's efforts to repackage some of them before this Court.[10] *See Stewart*, 561 F. Supp. 2d at 438; *Tanasi*, 257 F. Supp. 3d at 257 (holding that a counterclaim asserting that a foreclosure action violated the parties' forbearance agreement was barred by claim preclusion, in part because the proposed counterclaim questioned the validity of

---

[9] Plaintiff's unfair trade practices action likewise asserted claims based on the same facts. *See* ECF No. 52-5 at 1–6 (unfair trade practices complaint).

[10] *Compare, e.g.*, ECF No. 52-3 at 10-11 (alleging Carrington negligently handled Plaintiff's escrow account by failing to disclose changes in Plaintiff's property tax and insurance rates) *with* ECF No. 51 ¶¶ 62–78 (alleging Carrington intentionally and fraudulently failed to disclose changes in Plaintiff's property tax and insurance rates).

the plaintiff's right to seek foreclosure and thus was sufficiently connected to the foreclosure action to be barred). (citing *Rey*, 150 Conn. App at 278).

Counts Six, Seven, and Eight, which challenge Carrington's litigation conduct in the foreclosure action, are similarly barred. Count Six asserts that Carrington perpetuated fraud upon the Superior Court by engaging in litigation conduct designed to improperly influence the judicial process. ECF No. 51 ¶¶ 99–100. Count Seven, which asserts "abuse of process," challenges Carrington's ability to bring the foreclosure action. *See* ECF No. 51 ¶ 102 (alleging that the foreclosure suit was "frivolous and unjustified" and that Carrington brought suit to "intimidat[e]" Plaintiff into dropping his state court lawsuit against it, "circumvent" the state court action, and "use fraud to force the sale of the plaintiff's property."). Such claims were raised, and rejected, in the foreclosure action. *See* ECF No. 52-3 at 20–28 (motion to open, arguing that Carrington's conduct amounted to an abuse of process and that it submitted false information designed to mislead the Superior Court into reaching an incorrect conclusion); Case No. FBT-CV24-6138264-S, Dkt. No. 158.10 (denying motion to open). And Count Eight, which alleges that McCalla Raymer Liebert Pierce LLC failed to properly appear in the foreclosure action, was raised by Plaintiff as a defense there. *See* ECF No. 52-6 at 1–4 (Plaintiff's motion to strike various submissions by that law firm, on behalf of Carrington, because it has not "file[d] an appearance in this foreclosure action"); Case No. FBT-CV24-6138264-S, Dkt. No. 177.10 (denying motion to strike). Thus, Counts Six through Eight are barred for the same reasons as Counts One through Four: they are predicated on the same facts as claims asserted in the foreclosure action and challenge Carrington's ability to validly seek foreclosure. *See Stewart*, 561 F. Supp. 2d at 438; *Tanasi*, 257 F. Supp. 3d at 257.

In sum, if the Court found that Carrington improperly imposed fees and charges upon Plaintiff's mortgage account, issued fraudulent escrow statements, or committed fraud or abuse of process as alleged in the proposed SAC such that foreclosure was inappropriate, its ruling would "call into question the state court's judgment in the Foreclosure Action." *Tanasi*, 257 F. Supp. 3d at 259–60 ("These claims are too related to the Foreclosure Action for the [Plaintiffs] to raise them now."). Accordingly, Plaintiff is barred from asserting Counts One, Two, Three, Four, Six, Seven, and Eight.

*4. Futility*

In any event, even if *res judicata* did not bar these claims, they are futile.

As to Counts One, Two, and Four of the proposed SAC, these claims suffer from the same deficiencies as addressed with respect to the amended complaint; Plaintiff's new factual allegations are insufficient to surmount Carrington's arguments that Plaintiff has failed to plead that Carrington knowingly made false statements or meet Rule 9(b)'s heightened pleading standard. Count Four is also barred by the three-year statute of limitations, as it asserts events occurring in November 2021 at the latest, and this suit was not initiated until more than three years later, in February of 2025. *See* ECF No. 51-2 at ¶ 82; Conn. Gen. Stat. § 52-577 (("No action founded upon a tort shall be brought but within three years from the date of the act or omission complaint of.").

As to Count Three, which is a newly-alleged fraud claim based on purported inaccuracies in the escrow account disclosure statement projections provided to Plaintiff by Carrington, Plaintiff alleges that the disclosures were incorrect, but does not sufficiently allege that Carrington knowingly made false statements in them. Plaintiff states, in a conclusory manner, that Carrington "knowingly made false representations and material omissions" concerning his escrow account, ECF No. 51-2 ¶ 71, while also alleging that Carrington "possessed actual knowledge, or reasonably

should have possessed knowledge," that the disclosure statements were incorrect, *see id.* ¶ 68. But a fraud claim must be based on actual knowledge that the statement is untrue when it is made. *See Master-Halco, Inc., LLC*, 739 F. Supp. 2d at 114. Plaintiff alleges no *facts* to plausibly suggest that Carrington had such knowledge; his allegations are nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which do not suffice. *Iqbal*, 556 U.S. at 678. And, indeed, Plaintiff's allegation that Carrington "reasonably should have possessed knowledge," defeats any inference that Carrington *knowingly* made a false representation to Plaintiff.[11] Further, these allegations again do not satisfy Rule 9(b): Plaintiff does not identify with particularity the allegedly false statements or the date(s) they were made. *See* ECF No. 51-2 ¶¶ 62–64 (alleging the statements occurred "[f]rom around May 2018 through April 2022"); *id.* ¶ 66 (alleging the statements occurred "[o]n or about May 2018 through April 2019").

Plaintiff's proposed Count Five, for intentional infliction of emotional distress, cannot withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6). In addition to alleging the same claims of harassment through repeated phone calls and mailed notices of intent to foreclose, Plaintiff asserts that Carrington intentionally inflicted emotional distress upon him by misrepresenting Plaintiff's mortgage account status and improperly applying fees and penalties to his account. These additional facts do not allege extreme or outrageous conduct for the same reasons discussed with respect to Count Four of the amended complaint. The Court's reasoning for dismissing Count Four of the amended complaint above is incorporated by reference herein.

[11] Plaintiff's allegations sound more in negligent misrepresentation than in fraud. *See Glazer v. Dress Barn, Inc.*, 274 Conn. 33, 73 (2005). But any negligent representation claim based on these allegations would fail, because it, too, would be based on the same factual predicates that have already been litigated and rejected in the foreclosure action (Carrington's failure to disclose changes to Plaintiff's tax and insurance rates in its escrow disclosure statements). *See Stewart*, 561 F. Supp. 2d at 438.

Count Six, which asserts "fraud upon the court," is not cognizable. "[T]he Connecticut Supreme Court has specifically rejected a cause of action to recover damages arising from a fraud upon the court." *Tilley v. Anixter Inc.,* 283 F. Supp. 2d 729, 734–35 (D. Conn. 2003) (citing *Suffield Dev. Assocs. Ltd. P'ship v. National Loan Investors, L.P.,* 260 Conn. 766, 780 (2002)). Thus, it is impossible for Plaintiff to state a claim on Count Six.

Count Seven, alleging abuse of process, is likewise insufficient. To plead a claim for abuse of process under Connecticut law, a plaintiff must allege "(1) the defendant instituted proceedings or process against the plaintiff and (2) the defendant used the proceedings primarily to obtain a wrongful purpose for which the proceedings were not designed." *Coppola Const. Co. v. Hoffman Enters. Ltd. P'ship*, 157 Conn. App. 139, 191 (2015). "If the primary purpose for which the process is used is a purpose for which it was intended, a defendant is not liable, even if the defendant had 'an incidental motive of spite or an ulterior purpose of benefit to the defendant.'" *Speer v. Deutsche Bank Nat'l Trust Co.*, 3:23-CV-1492, 2025 WL 969366, at *5 (D. Conn. Mar. 31, 2025) (quoting *Doctor's Assocs., Inc. v. Weible*, 92 F.3d 108, 114 (2d Cir. 1996)). Here, Plaintiff's allegations that Carrington filed the foreclosure action for the purpose of intimidating him into dropping his unfair trade practices suit are merely conclusory. Plaintiff alleges no facts to suggest that the foreclosure action was brought for this purpose, rendering the claim deficient. *See Iqbal*, 556 U.S. at 678. And to the extent Plaintiff alleges that Carrington brought the foreclosure action to force the sale of the property, that is the typical purpose for bringing a foreclosure action—not an improper one.

Count Eight, which asserts "vicarious liability," is not a cognizable claim under Connecticut law. Where there is no "underlying tort claim on which the claim of vicarious liability can be premised," there can be no claim of vicarious liability. Vicarious liability is dependent

upon the existence of an underlying actionable tort, and "where no such tort has been adequately alleged, a claim of vicarious liability necessarily fails." *Armentano v. Wachler*, No. FST-CV-24-6068888-S, 2025 WL 3860502, at *3, n.2 (Conn. Super. Ct. Dec. 29, 2025); *see also Pettengill v. Fireman's Fund Ins., Co.*, No. 3:13-CV-154 (WWE), 2013 WL 4054635, at *3 (D. Conn. Aug. 12, 2013) (dismissing claim of "respondeat superior" because "respondeat superior is a theory of liability rather than an independent cause of action"). There is thus no need to reach Carrington's argument that Counts Seven and Eight are barred by litigation privilege.

Finally, Count Nine, Plaintiff's proposed FCRA claim, does not plausibly give rise to an entitlement to relief. The proposed amended complaint indicates that Plaintiff "notified [Carrington] of disputed inaccurate information," and that Carrington "continued reporting inaccurate information after the dispute." ECF No. 51 ¶ 114. Plaintiff alleges that Carrington violated 15 U.S.C. § 1681i. *Id.* But 15 U.S.C. § 1681s-2 governs the duties of furnishers upon "notice pursuant to [§ 1681i] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency." Accordingly, the Court construes this claim as one brought under § 1681s-2.

"There is a private right of action under § 1681s–2(b). However, in order for this provision to apply, the person reporting information must have received notice of the dispute *from a consumer reporting agency*." *MacPherson v. JP Morgan Chase Bank, N.A.*, No. 3:09-CV-1774 (AWT), 2010 WL 3081278, at *4 n.6 (D. Conn. Aug. 5, 2010), *aff'd sub nom. Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45 (2d Cir. 2011) (italics original) (citing 15 U.S.C. § 1681i(a)(2) and *Kane v. Guar. Residential Lending, Inc.*, No. 04-CV-4847 (ERK), 2005 WL 1153623, *4 (E.D.N.Y. May 16, 2005) ("[T]he duty to investigate . . . is triggered only after a furnisher of information receives notice *from a credit reporting agency* of a consumer's dispute."))

In this case, Plaintiff does not allege that any consumer reporting agency notified Carrington about his dispute. Rather, he alleges that *he* notified Carrington. ECF No. 51-2 ¶ 114. Accordingly, he has not alleged facts sufficient to establish that he has a private right of action under § 1681s–2(b).

*5. Future Amendments*

Having found that Plaintiff's proposed SAC is futile, the Court considers whether to grant Plaintiff further leave to amend. Courts must ordinarily grant *pro se* litigants leave to amend at least once, but may deny further leave to amend if the defects in the claims are substantive and would not be fixed with better pleading. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Here, the Court previously granted Plaintiff leave to amend, and has concluded above that his amended complaint must be dismissed. Plaintiff's proposed SAC is likewise futile, as explained above.

The Court has determined that further leave to amend is not appropriate. For the reasons described above, most of the defects in Plaintiff's proposed claims in his SAC are substantive, and better pleading will not cure them. *Id.* As to any pleading defects that could possibly be curable, Plaintiff has now had two chances to amend to state plausible claims—through his first amended complaint and his proposed SAC, and has not done so. Indeed, his proposed SAC raised several claims that are not legally cognizable. The Court thus exercises its discretion not to allow further amendment, as Plaintiff has not explained how he might amend his complaint in a manner that would not be futile. *See Sutton ex rel. Rose v. Wachovia Sec., LLC*, 208 F. App'x 27, 29 (2d Cir. 2006).

With respect to Plaintiff's FCRA claim specifically, however, the Court rejects Carrington's argument that the jury verdict in the state court unfair trade practices action forecloses an FCRA claim based on Carrington's reports to credit agencies. Carrington asserts that any FCRA claim would be futile because "he cannot plausibly allege that Carrington reported any inaccurate

information," as the jury "found that Carrington's accounting was accurate and the foreclosure court found that Plaintiff was in default." ECF No. 52 at 14 n.5. But the verdict form Carrington attaches to its memorandum of law does not demonstrate that the jury concluded Carrington did not provide inaccurate information to credit reporting agencies. ECF No. 52-1 at 1–6. Instead, the jury found that Plaintiff failed to prove that Carrington was "negligent in calculating and handling the escrow portion of his mortgage payment" and that Plaintiff did not prove "that he performed his obligations under the contract or that his performance was excused." *Id.* at 1, 3. That Plaintiff did not meet his burden to affirmatively demonstrate Carrington's negligence in handling his escrow payments or his performance under the mortgage contract does not definitively preclude an allegation that Carrington made false reports to credit agencies. Thus, the FCRA claim is not foreclosed.

However, the Court notes that Plaintiff argued in response to Carrington's motion to dismiss that he "does not remember informing the credit reporting agency about the disputed late fees or disputed incidental amount added to his mortgage account." ECF No. 39 at 9. Plaintiff's factual allegations with respect to this and other claims have shifted throughout the pendency of this lawsuit. *Compare, e.g.*, ECF No. 1 ¶ 26 (explaining that Plaintiff continued to tender payments in the amount of $2,231.21 even after his payment increased to $2,431.83) *with* ECF No. 31 ¶ 31 ("as a result of the overcharge, Brown increase[d] his mortgage payments") *and* ECF No. 51 ¶ 46 ("Plaintiff submitted potential partial payments to Defendant. Defendant accepted and retained Plaintiff's partial payments"). Accordingly, the Court is not convinced that amendment of the FCRA claim would suffice to state a claim under § 1681s–2(b), as Plaintiff has offered no indication that any credit reporting agency reported to Carrington any dispute about the information it, in turn, furnished.

## IV. CONCLUSION

For the reasons described herein, Carrington's motion to dismiss is GRANTED, and Plaintiff's motion for leave to amend is DENIED.

The Court is directed to enter judgment for Defendant Carrington and close this case.

**SO ORDERED** at Hartford, Connecticut, this 15th day of September, 2026.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE